## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA

DERMATOLOGY )
SPECIALISTS OF AUGUSTA, )
INC., on behalf of itself and all )        Civil Action No.
others similarly situated, )
)
          Plaintiff, )        **COMPLAINT – CLASS ACTION**
)
v. )        *Jury Trial Demanded*
)
DAIKIN INDUSTRIES, LTD., )
DAIKIN APPLIED AMERICAS )
INC., and DAIKIN NORTH )
AMERICA, LLC, )
)
          Defendants. )

## COMPLAINT

Plaintiff Dermatology Specialists of Augusta, Inc. ("Plaintiff") individually

and on behalf of all others similarly situated, respectfully bring this action against

Defendants Daikin Industries, Ltd., Daikin Applied Americas Inc., Daikin North

America, LLC (collectively "Defendants"), and allege as follows:

## THE PARTIES

1.      Plaintiff Dermatology Specialists of Augusta, Inc. is incorporated

under the laws of the State of Georgia, conducting business with its principal place

of business in the City of Evans, Columbia County, located in the Southern District

of Georgia.

1

2.      Defendant Daikin Industries, Ltd. is a Japanese multinational corporation that designs, manufactures, sells, and distributes heating, ventilation, and air conditioner ("HVAC") products worldwide.  Daikin Industries, Ltd.'s principal place of business is at:  Umeda Center Building, 2-4-12, Nakazaki-Nishi, Kita-ku, Osaka 530-8323, Japan.  Defendant Daikin Applied Americas Inc. ("Daikin Applied") is a Minnesota corporation with its corporate headquarters at 13600 Industrial Park, Blvd., Minneapolis, Minnesota 55441.  Daikin Applied can be served via its registered agent, CT Corporation, 1201 Peachtree Street NE, Atlanta, GA 30361.  Defendant Daikin North America, LLC is a Texas corporation with its corporate headquarters at 10787 Clay Road, Houston, Texas 77041.  Daikin North America, LLC can be served via its registered agent, Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, DE  19808.

3.      Defendants Daikin Industries, Daikin Applied, and Daikin North America design, manufacture and sell heating, ventilation, and air conditioning units ("HVAC units") containing a component known as an evaporator coil manufactured with copper tubing ("Daikin Coils").

4.      Daikin Coils contain a refrigerant that absorbs heat from surrounding air, cooling the air in the process, and allowing Defendants' HVAC units to provide air conditioning for homes, businesses, and buildings.

5.      Instead of performing their intended purpose of cooling air, Daikin Coils fail to cool air because they corrode and leak refrigerant well before the expiration of their useful life.  These leaks render the HVAC units useless for their intended purpose, leading to costly repairs, and eventually, the total failure of the Daikin Coils such that they need to replaced.

6.      The failure of Daikin Coils to perform as intended is an unavoidable consequence of their design. As a result of their manufacturing process, the copper tubes in the Daikin Coils are prone to "formicary corrosion."  This process causes microscopic holes within the tubing that cause the Daikin Coils to leak refrigerant and ultimately fail.  The corrosion and failure of Daikin Coils are due to Defendants' actions, including but not limited to, selecting the wrong alloy, defective manufacturing of the Daikin Coils, and failing to properly ensure that the Daikin Coils will perform for their useful life and are fit for their intended purpose. Defendants designed, created product materials for, designed instructions for, caused the manufacture of, and sold HVAC units containing Daikin Coils that were installed in homes throughout Georgia, including Plaintiff's and the Class's homes.

## JURISDICTION AND VENUE

7.    The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 because Plaintiff brings a cause of action created by federal law, and by 28 U.S.C. § 1332(d)(2) because minimal diversity of citizenship exists amongst the parties and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

8.    Defendants are subject to personal jurisdiction in this Court pursuant to Fed. R. Civ. P. 4 and O.C.G.A. § 9-10-91 in that they (1) transact business within this state, (2) committed the unlawful acts and/or omissions that give rise to this action within this state, (3) regularly do or solicit business in this state, (4) derive substantial revenue from services rendered in this state, and (5) caused injury to property in this state arising out of Defendants' acts and/or omissions conducted outside of this state at, or about, the same time as such injuries. Plaintiff is a resident of Columbia County in the State of Georgia.

9.    Venue is proper in this Court pursuant to S.D. Ga. Local Rule 2.1 and 28 U.S.C. § 1391(b)(2)in that a substantial part of the events and/or omissions giving rise to these claims occurred in this District.

## FACTUAL ALLEGATIONS

10.    Defendants' HVAC units are designed to cool air.  They do this through the use of evaporator coils (the aforementioned "Daikin Coils") which

4

house gaseous refrigerant that absorbs heat from the surrounding air. The trapped heat is then expelled from the exterior of the building to the outside.

11.     In a properly functioning HVAC unit, refrigerant rarely—if ever—needs to be replaced. Unlike fuel, refrigerant does not deplete from use. Moreover, evaporator coils are designed to be sealed systems such that the refrigerant cannot escape. Thus, low refrigerant levels are most likely caused by a leak.

12.     The Daikin Coils are defectively manufactured and designed using defective copper tubing. As a result of their intended design and the chosen alloy from which they are made, Daikin Coils are particularly susceptible to formicary corrosion and leaking of refrigerant due to said corrosion. Named for its tendency to manifest in branching microscopic tunnels,[1] formicary corrosion forms in Daikin Coils, resulting in microscopic holes that allow the gaseous refrigerant to escape. Corrosion in Daikin Coils begins as soon as the Daikin Coils are put to use under normal environmental conditions—the same conditions Defendants intended that the Daikin Coils perform under. The result is that Daikin Coils leak refrigerant at an ever increasing rate within months of installation, dramatically diminishing the useful life of the product.

13.     Defendants knew or should have known that the Daikin Coils were and are defectively designed and manufactured, resulting in corrosion, leaking

---

[1] The word "formicary" is derived from the Latin for "ant's nest."

refrigerant, and impeded useful life. The fact that copper evaporator coils are particularly susceptible to formicary corrosion was widely known in the HVAC industry, including Defendants, at the time Defendants manufactured, sold and distributed the Daikin Coils. Formicary corrosion of copper tubing used for HVAC evaporator coils has been the subject of several articles in HVAC trade publications. (*See* Exhibit A attached hereto).

14.     Despite having knowledge of the defects in the Daikin Coils, Defendants failed to disclose the defective nature of the Daikin Coils to consumers. Defendants also failed to recall and/or retrofit their HVAC units with non-defective evaporator coils.

15.     The Daikin Coils expose consumers to health and safety risks. Leaked refrigerant can cause severe injury if inhaled or if it comes in contact with skin or eyes; even low levels of exposure can result in redness and pain.  Higher levels of exposure result in frostbite and blistering of the skin.  If inhaled in its gaseous form, refrigerant causes shortness of breath, severe headaches, dizziness, nausea, weakness, loss of consciousness, and irregular cardiac activity.  Because refrigerant vapor is heavier than air, it accumulates in the lungs once inhaled, potentially leading to suffocation.

16.    In addition, leaked refrigerant can cause damage to surrounding property, including walls, floors, other components of HVAC units, and/or other items in the vicinity of the leak.

17.    The Daikin Coils also damage the environment.  The refrigerant in Daikin Coils is R-410A, commonly known as "Puron," and is what is known as a high Global Warming Potential ("high-GWP") gas.  Global Warming Potential ("GWP") is a value that measures the global warming impact of different gases relative to carbon dioxide. According to the Environmental Protection Agency's website, "The larger the GWP, the more that a given gas warms the Earth compared to carbon dioxide over [a given] time period."  For example, because it is being used as the base reference point, carbon dioxide has a GWP of one. Nitrous oxide has a GWP of 265-298 times that of carbon dioxide. The GWP of Puron dwarfs that of either carbon dioxide or nitrous oxide. According to the California Air Resources Board ("CARB"), Puron has a GWP 2,288 times greater than that of carbon dioxide. In other words, defective Daikin Coils are responsible for emitting a greenhouse gas that is thousands of times more potent than $CO_2$, which is one of the leading contributors to global climate change.

18.    Defendants are in possession of the current descriptions, designs for and/or representations of the defective Daikin Coils installed in Plaintiff's and the Class's homes. Defendants are also in possession of part numbers, UPCs,

descriptions and/or representations of the defective Daikin Coils that Plaintiff and the Class may use to supplement the list of defective Daikin Coils in an amendment to this Complaint.

### PLAINTIFF DERMATOLOGY SPECIALISTS OF AUGUSTA

19.    In March 2010, Plaintiff purchased and installed an HVAC system consisting of nineteen HVAC units (17 indoor and two outdoor) at its medical offices located in Evans, Georgia. This HVAC system was manufactured, sold and distributed by Defendants and was installed by a Daikin-certified installer. Plaintiff's HVAC system is comprised of the following Daikin models:  (1) two outdoor VRV III Inverter units, model # RXYQ120PTJU, and (2) seventeen interior units.

20.    Plaintiff has suffered harm and will continue to suffer harm as a result of its defective Daikin Coils. The Daikin Coils in Plaintiff's medical building have corroded and leaked refrigerant such that its HVAC units failed because they could no longer adequately cool air.  To date, Plaintiff has replaced the Daikin Coils in four (4) of the seventeen (17) interior HVACs and in both of the exterior HVAC units.  Based on past failures, the remaining coils will most likely require replacement in the near future.

21. Plaintiff has incurred out-of-pocket repair and service costs due to the Daikin Coils. In addition to paying for replacement coils, Plaintiff has incurred considerable costs in repeatedly replenishing its Daikin Coils with refrigerant.

22. Plaintiff's Daikin Coils failed well within their useful life, were not fit for their intended purpose, violated Defendants' express and implied warranties, and deprived Plaintiff of the benefit of the bargain provided to owners of Daikin HVAC units.

23. Plaintiff did not receive the benefit of its bargain because it bargained for HVAC units that were supposed to cool air, not be equipped with defective coils, and would perform as intended for a reasonable useful life for HVAC units. Instead, as the direct result of Defendants' misconduct, Plaintiff Specialists of Augusta owns HVAC units that could not cool air, were equipped with failed evaporator coils, and have a substantially diminished useful life, all resulting in (1) out-of-pocket expenses, (2) far less valuable HVAC units than originally bargained for, and (3) failed major appliances that diminish Plaintiff's property value unless replaced.

## THE CLASS

24. As a result of Defendants' misconduct, Plaintiff and members of the Class suffered several injuries, including but not limited to the following:

- They own Daikin HVAC units that are less valuable than other HVAC units that they reasonably expected to purchase either by directly purchasing a Daikin HVAC with Daikin Coils or by purchasing property with a Daikin HVAC with Daikin Coils installed in it. Plaintiff and each member of the Class reasonably expected s/he/it would own an HVAC unit that was free of such defects, but instead they all received an HVAC unit with defects, a diminished useful life and, therefore, diminished monetary value than for what they bargained when taking ownership of the product. Thus, Plaintiff and each member of the Class overpaid for his/her/its HVAC units;

- They own Daikin HVAC units with Daikin Coils that have cost them money to test, repair, and replace before the expiration of their useful life;

- They own Daikin HVAC units with Daikin Coils that expose them to increased risks of costs to test, repair and replace before the expiration of their useful life;

- Their Daikin HVAC units with Daikin Coils have diminished the values of their homes and businesses;

- Their Daikin HVAC units with Daikin Coils increase the risk of diminishing the values of their homes and businesses;

- They have suffered damages to health, safety and other property surrounding their Daikin HVAC units due to leaking refrigerant in their homes and businesses; and

- They are exposed to increased risks of suffering damages to health, safety and other property surrounding their Daikin HVAC units due to leaking refrigerant in their homes and businesses.

## CLASS ACTION ALLEGATIONS

25.    This action is brought by Plaintiff individually and as a class action under Fed. R. Civ. P. 23 for damages and injunctive relief for a proposed class defined as follows ("the Class"):

> All individual, entity, and associations of owners in the State of Georgia who own HVAC units with Daikin Coils installed in them.

26.    These individuals and entities are herein referred to as "Class Members" or "the Class." The proposed "Class Representative" is Plaintiff Dermatology Specialists of Augusta, Inc., whose president is Sanders R. Callaway, M.D.

27.    **Exclusions from the Class**. Plaintiff specifically excludes from the Class all Defendants, Defendants' subsidiaries or affiliates, entities in which any

Defendant has a controlling interest and any and all of Defendants' employees, affiliates, legal representatives, successors or assignees. Plaintiff also excludes from the Class any judicial officers assigned to this case and their immediate family members.

28.     **Ascertainability**. Plaintiff brings this action on behalf of itself and on behalf of the Class, which is comprised of members identified by the class definition.

29.     **Numerosity**. The members of the Class are so numerous that their joinder would be impracticable, and disposition of their claims in a class action rather than in individual actions would benefit the parties and the courts. Plaintiff is informed and believes that there are thousands of HVAC units equipped with defective Daikin Coils in the State of Georgia.

30.     **Means for Identification**. Reasonably available means of identifying Class Members (at the appropriate time following class certification) exist. For example, Class Members can be determined from registration records, sales records, production records, and other information kept by Defendants or third parties in the usual course of business and within their control.

31.     **Community of Interest – Commonality**. There is a well-defined community of interest amongst the members of the Class in the questions of law.

Questions of fact and law predominate and include, but are not limited to, the following:

- Whether the Daikin Coils are defective;

- Whether the Daikin Coils have an impeded useful life;

- Whether the Daikin Coils serve their intended purposes;

- Whether the Daikin Coils impede the useful lives of other components in Plaintiff's and the Class's properties and homes;

- Whether the Daikin Coils cause damage to other components in Plaintiff's and the Class's properties and homes;

- Plaintiff's and the Class's damages;

- Whether the Daikin Coils endanger Plaintiff and the Class, their families, and their communities;

- Whether Defendants breached their express and implied warranties; and

- Whether Defendants acted in bad faith.

32.    The Class claims all derive directly from a single course of conduct by Defendants. This case is about the responsibility of Defendants, at law and in equity, for their knowledge, their conduct, and their products. Defendants have engaged in uniform and standardized conduct toward the Class. They did not differentiate, in degree of care or candor, their actions or inactions, or in the

13

content of their statements or omissions, among individual Class members. Within each Claim for Relief asserted by the Class, the same legal standards govern. Accordingly, Plaintiff brings this lawsuit as a class action on its own behalf and on behalf of all others similarly situated pursuant to Federal Rule of Civil Procedure 23. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of the provisions, therein.

33.    **Typicality**. The named Plaintiff's claims are typical of those of the Class and arise from the same course of conduct by Defendants. Plaintiff seeks relief that is typical of the relief sought for absent Class Members.

34.    **Community of Interest – Adequacy of Class Representative**. The named Plaintiff can fairly and adequately represent the interests of the Class because it is a member of the Class, have claims that are typical of the Class, and there is no reason why it cannot adequately represent the Class. Plaintiff has retained counsel with substantial experience in complex litigation and, specifically, in consumer class action litigation, including actions involving defective products.

35.    **Community of Interest – Adequacy of Counsel**. Counsel for Plaintiff are competent, qualified, and experienced in large class actions and multi-party complex cases, and there is no reason why they cannot adequately represent the Class.

36.    **Superiority – Impracticability of Joinder**. Maintenance of this class action is superior to other methods for the fair and efficient adjudication of this controversy because joinder of the unnamed Class Members on an individual basis would be impracticable in light of their number and locations throughout the State of Georgia.

37.    **Superiority – No Better Remedy**. The expense and burden of individual litigation make it highly impossible for the vast majority of the Class to proceed individually, and it is most efficient to resolve all of these common claims based on Defendants' conduct in a single forum. Prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying results that would be dispositive of the interests of the other Class Members not party to the adjudication. This would also result in incompatible standards of conduct for Defendants and substantially impede the Class's ability to protect their interests. Because the damages suffered by each Class Member, while significant, are likely to be relatively small, the expense and burden of individual litigation is economically infeasible to pursue lawful remedies other than by a class action.

38.    **Superiority – No Individualized Defenses**. There are no predominately unique or individualized defenses anticipated in this action that might be asserted against Plaintiff individually, as distinguished from the Class.

This is not a class action that will require an individual analysis of Defendants'

conduct as to individual Class Members.

## CLAIMS FOR RELIEF

### COUNT I
### Violation of the Magnuson-Moss Warranty Act
### (15 U.S.C. §§ 2301, *et. seq.*)

39.     Plaintiff and the Class hereby incorporate by reference the factual

allegations contained in the preceding paragraphs of this complaint as though fully

set forth herein.

40.     This Court has jurisdiction to decide claims brought under 15 U.S.C.

§ 2301 by virtue of 28 U.S.C. § 1332(d)(2).

41.     The subject HVAC units and their Daikin Coils are "consumer

products," as defined in the Magnusson-Moss Warranty Act, 15 U.S.C. § 2301(1).

42.     Plaintiff and the Class are "consumers," as defined in the Magnuson-

Moss Warranty Act, 15 U.S.C. § 2301(3).

43.     Defendants are "supplier[s]" and "warrantor[s]," as defined in the

Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301(4) and (5).

44.     Defendants provided Plaintiff and the Class with "implied warranties"

as defined in the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7).

45.     Defendants breached these implied warranties as described herein,

including, but not limited to, Defendants' defective Daikin Coils which caused

damages to Plaintiff and the Class. Said damages include, but are not limited to, diminished value of Plaintiff's and the Class's HVAC units and/or real property.

46.    Defendants warranted that the Class HVACs were fit for their ordinary purpose of cooling air, would pass without objection in the trade as designed, manufactured, and marketed, and were adequately contained, packaged, and labeled. Defendants' HVAC units share common defects in that they contain defective Daikin Coils that corrode, leak dangerous refrigerant, malfunction, and fail long before the end of the product's useful life.

47.    By Defendants' conduct as described herein, including Defendants' knowledge of the defects inherent in the Daikin Coils, and their action and inaction, while knowing of the defects, Defendants failed to comply with their obligations under their written and implied promises, warranties, and representations.

48.    As warrantors, and by the conduct described herein, Defendants improperly attempted to limit their implied warranties to exclude coverage for the defective Daikin Coils. Said conduct is unconscionable, and any such effort to disclaim or otherwise limit liability for the defective Daikin Coils is null and void.

49.    Plaintiff and the Class are in privity with Defendants in that they purchased Defendants' HVAC units equipped with the Daikin Coils from Defendants or their agents. Plaintiff and each of the other Class Members have had

sufficient direct dealings with Defendants or their agents to establish privity of contract.

50.     Plaintiff and the Class are intended third-party beneficiaries of contracts between Defendants and merchants, retailers, contractors, and/or installers of Defendants' HVAC units, including the implied warranties therefor, such that direct privity of contract is not required. Merchants, retailers, contractors, and/or installers are not the intended end-user or consumer of Defendants' HVAC units; Defendants' HVAC units and accompanying warranties are for the benefit of end-users and consumers such as Plaintiff and Class Members.

51.     The Daikin Coils are dangerous instrumentalities due to the aforementioned defects and nonconformities alleged herein such that direct privity of contract between the parties is not required.

52.     Pursuant to 15 U.S.C. § 2310(e), Plaintiff is entitled to bring this class action and are not required to give Defendants notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiff pursuant to Rule 23 of the Federal Rules of Civil Procedure. Notwithstanding, Plaintiff has provided Defendants with ample notice and an opportunity to cure the defects by and through direct communications with Defendants and Defendants' agents.

53.     Defendants failed to remedy the defective Daikin Coils despite Plaintiff's and the Class's complaints and service calls such that compliance with any informal dispute procedure is excused as futile. Compliance with any informal dispute procedure is further excused as futile because Defendants were aware that the Daikin Coils would not perform as warranted and yet continued to place their HVAC units in the marketplace without remedy or any disclosure of their defective Daikin Coils.

54.     As a result of Defendants' breach of implied warranties, Plaintiff and the Class are entitled to revoke their acceptance of the HVAC units equipped with Daikin Coils, obtain damages and equitable relief, and obtain costs pursuant to 15 U.S.C. § 2310(d).

55.     Further, Plaintiff and the Class are entitled to equitable relief under 15 U.S.C. § 2310(d)(1).  Based on Defendants' continuing failures to fix the known dangerous defects, Plaintiff seeks a declaration that Defendants have not adequately implemented their recall commitments and requirements and general commitments to fix their failed processes, and injunctive relief in the form of judicial supervision over the recall process is warranted.  Plaintiff also seeks the establishment of a Defendant-funded program for Plaintiff and Class members to recover out of pocket costs incurred, as discussed above.

56.    Plaintiff and the Class suffered harm, damages, and economic losses and will continue to suffer such harm, damages, and economic losses.

57.    Defendants' misconduct was a substantial factor in causing and proximately caused Plaintiff's and the Class's harm, damages, and economic losses.

58.    Defendants' conduct was gross, reckless and in bad faith or willful disregard of the rights and interest of Plaintiff and the Class.  Defendants acted intentionally, maliciously and oppressively, with a willful and conscious disregard of the rights of Plaintiff and the Class, so as to constitute oppression, fraud or malice under the law.

## COUNT II
## Breach of Express Warranties
## (O.C.G.A. § 11-2-313(1) (a)-(b))

59.    Plaintiff and the Class hereby incorporate by reference the factual allegations contained in the preceding paragraphs of this complaint as though fully set forth herein.

60.    Defendants made express warranties concerning the Daikin Coils including, but not limited to, representations in their catalogs that their products containing Daikin Coils benefit from "[h]igh efficiency, low operating costs;" "reliable operation;" and "low-cost maintenance and service." Additionally, Defendants represented that their products containing Daikin Coils are "sold

20

pursuant to […] standard terms and conditions of sale, including Limited Product

Warranty." Said descriptions of the products and warranties were made part of the

basis of the bargain and expressly warranted that the Daikin Coils were fit for

particular purposes at the time of purchase and sale.

61.    Defendants intended that their express warranties extend to and

benefit Plaintiff and the Class with Daikin Coils in their HVAC units, including,

but not limited to, warranting that the Daikin Coils were free of defects such that

they would properly perform as intended.

62.    The Daikin Coils were neither merchantable nor fit for use for their

particular purposes at the time of purchase and sale.

63.    Defendants breached their warranties concerning the Daikin Coils

given that the Daikin Coils corrode, leak refrigerant, and impede the efficient

operation of Plaintiff's and the Class's HVAC units. The Daikin Coils' tendency to

leak refrigerant will render an HVAC unit inoperable. Defective Daikin Coils

require costly maintenance and service in order to continue operating in their

compromised state. Such costs include, but are not limited to, replacing leaked

refrigerant, and the replacement and reinstallation of Daikin Coils.

64.    Plaintiff and the Class have suffered, or are at imminent risk of

suffering, substantial damage to property due to leaked refrigerant, and Plaintiff

and the Class will continue to suffer, or be at imminent risk of suffering such substantial property damage in the future.

65.    Defendants' misconduct was a substantial factor in causing and proximately caused Plaintiff's and the Class's harm, damages and economic losses.

66.    Defendants' conduct was gross, reckless and in bad faith or willful disregard of the rights and interests of Plaintiff and the Class. Defendants acted intentionally, maliciously and oppressively, with a willful and conscious disregard of the rights of Plaintiff and the Class, so as to constitute oppression, fraud or malice under the law.

## COUNT III
## Breach of Implied Warranty of Merchantability
## (O.C.G.A. § 11-2-314)

67.    Plaintiff and the Class hereby incorporate by reference the factual allegations contained in the preceding paragraphs of this complaint as though fully set forth herein.

68.    Defendants are "merchants" with respect to the goods they sold to Plaintiff and the Class within the meaning of O.C.G.A. § 11-2-314(1).

69.    Pursuant to O.C.G.A. § 11-2-314, a warranty that the Daikin Coils were in a merchantable condition was implied by law in any sales transactions for those goods.

70.     Defendants made implied warranties concerning the Daikin Coils, including, but not limited to, the warranty of merchantability.

71.     Defendants intended that their implied warranties extend to and benefit Plaintiff and the Class.

72.     Defendants breached their implied warranty of merchantability concerning the Daikin Coils.

73.     At the time the Daikin Coils were purchased as component parts of Defendants' HVAC units, the Daikin Coils were not suitable for their particular purpose in that they were not of the same quality as those generally accepted in the trade, were not fit for the ordinary purpose for which such goods are used, were not adequately contained, packaged and labeled, had inadequate instructions, and/or did not measure up to the promises or facts stated about the products.

74.     The Daikin Coils are inherently defective in that they corrode such that the refrigerant contained in the Daikin Coils leaks, releasing harmful refrigerant and rendering Plaintiff's and the Class's HVAC units unable to cool air.

75.     Defendants were provided actual or constructive notice of defects in the Daikin Coils by and through direct communications with Plaintiff and Plaintiff's agents, as well as numerous complaints from consumers, warranty claims, and various writings in trade publications and scientific journals regarding

the issue of formicary corrosion in copper evaporator and condenser coils.  (*See* Exhibit A attached hereto).

76.    On December 11, 2015, Plaintiff mailed a letter to Takayuki Inoue, the Senior Vice President of the SVP, VRV and Light Commercial division of Defendant Daikin North America LLC. The letter identified Plaintiff, described the nature of the defect in Plaintiff's Daikin HVAC units, described the extent of the damages incurred by Plaintiff due to the Daikin Coils, and requested adequate relief from Defendants. Defendants did not respond to the letter for several weeks, prompting Dr. Callaway to send a follow-up email on January 4, 2016. Mr. Inoue confirmed that he received the letter in a reply email to Plaintiff Callaway dated January 6, 2016.

77.    Plaintiff and the Class suffered harm, damages, and economic losses and will continue to suffer such harm, damages, and economic losses.

78.    Defendants' misconduct was a substantial factor in causing and proximately caused Plaintiff's and the Class's harm, damages, and economic losses.

79.    Defendants' conduct was gross, reckless and in bad faith or willful disregard of the rights and interest of Plaintiff and the Class. Defendants acted intentionally, maliciously and oppressively, with a willful and conscious disregard

of the rights of Plaintiff and the Class, so as to constitute oppression, fraud or

malice under the law.

## COUNT IV
## Breach of Implied Warranty of Fitness for a Particular Purpose
## (O.C.G.A. § 11-2-315)

80.     Plaintiff and the Class hereby incorporate by reference the factual

allegations contained in the preceding paragraphs of this complaint as though fully

set forth herein.

81.     Pursuant to O.C.G.A. § 11-2-315, a warranty that the Daikin Coils

were fit for a particular purpose was implied by law in any sales transactions for

those goods.

82.     Defendants made implied warranties concerning the HVAC units and

Daikin Coils, including, but not limited to, the warranty of fitness.

83.     Defendants intended that their implied warranties extend to and

benefit Plaintiff and the Class, including, but not limited to, warranting that the

Daikin Coils were free of defects such that they would perform as intended.

84.     At the time the HVAC units equipped with the Daikin Coils were

purchased, Defendants knew or had reason to know that the Daikin Coils would be

used for a particular purpose and that purchasers and/or installers would justifiably

rely on Defendants' skill and judgment in selecting, providing, and/or furnishing

Daikin Coils suitable for that particular purpose.

85.    The Daikin Coils are not suitable for their particular purpose such that Defendants breached the implied warranty of fitness.

86.    The Daikin Coils suffered from an inherent, latent defect at the time of sale and thereafter were not fit for their intended purpose. Said defects include, but are not limited to, being susceptible to corrosion and allowing refrigerant to leak such that the HVAC units cannot cool air.

87.    Plaintiff and the Class suffered harm, damages, and economic losses and will continue to suffer such harm, damages, and economic losses.

88.    Defendants' misconduct was a substantial factor in causing and proximately caused Plaintiff's and the Class's harm, damages, and economic losses.

89.    Defendants' conduct was gross, reckless and in bad faith or willful disregard of the rights and interest of Plaintiff and the Class. Defendants acted intentionally, maliciously and oppressively, with a willful and conscious disregard of the rights of Plaintiff and the Class, so as to constitute oppression, fraud or malice under the law.

## COUNT V
## Strict Liability: Failure to Warn
## (O.C.G.A. § 51-1-11)

90.     Plaintiff and the Class hereby incorporate by reference the factual

allegations contained in the preceding paragraphs of this complaint as though fully

set forth herein.

91.     The Daikin Coils are defective due to inadequate warnings or

instruction for use, both prior to marketing and post-marketing.

92.     The Daikin Coils had risks that were known or knowable to

Defendants in light of the scientific knowledge that was generally accepted at the

time of manufacture, distribution, and/or sale. Such dangers include, but are not

limited to, frostbite, blistering skin, shortness of breath, severe headaches,

dizziness, nausea, weakness, loss of consciousness, irregular cardiac activity,

suffocation, and substantial property damage.

93.     The risks of the Daikin Coils present such substantial dangers when

the Daikin Coils are used or misused in an intended or reasonably foreseeable way.

94.     Ordinary consumers would not recognize the potential risks posed by

the Daikin Coils absent a warning.

95.     Defendants were provided actual or constructive notice of defects in

the Daikin Coils by and through numerous complaints from consumers, warranty

claims, and various writings in trade publications and scientific journals regarding

the issue of formicary corrosion of copper evaporator and condenser coils.
Defendants knew or reasonably should have known that the Daikin Coils created
such significant risks to persons and property prior to manufacturing, distributing,
and/or selling HVAC units to Plaintiff and the Class.

96.    Defendants had a duty to adequately warn of known or reasonably
foreseeable dangers arising from the use of the Daikin Coils. Defendants failed to
adequately warn consumers, including Plaintiff and the Class, of such risks.

97.    Because of Defendants' failure to provide adequate warnings with
their HVAC units, Daikin Coils were purchased for use in Plaintiff's and the
Class's properties and homes after Defendants manufactured, designed, sold,
supplied, marketed, and/or otherwise introduced them into the stream of
commerce.

98.    Plaintiff and the Class suffered harm, damages, and economic losses
and will continue to suffer such harm, damages, and economic losses.

99.    Defendants' misconduct was a substantial factor in causing and
proximately caused Plaintiff's and the Class's harm, damages, and economic
losses.

100.    Defendants' conduct was gross, reckless and in bad faith or willful
disregard of the rights and interests of Plaintiff and the Class. Defendants acted
intentionally, maliciously and oppressively, with a willful and conscious disregard

28

of the rights of Plaintiff and the Class, so as to constitute oppression, fraud or malice under the law.

## COUNT VI
### Strict Liability: Manufacturing Defect
### (O.C.G.A. § 51-1-11)

101.    Plaintiff and the Class hereby incorporate by reference the factual allegations contained in the preceding paragraphs of this complaint as though fully set forth herein.

102.    The Daikin Coils contained a manufacturing defect when they left Defendants' control and possession.

103.    The Daikin Coils had risks that were known or knowable to Defendants in light of the scientific knowledge that was generally accepted at the time of manufacture, distribution, and/or sale.  Such dangers include, but are not limited to, frostbite, blistering skin, shortness of breath, severe headaches, dizziness, nausea, weakness, loss of consciousness, irregular cardiac activity, suffocation, and substantial property damage.

104.    Defendants knew or reasonably should have known that the Daikin Coils created such significant risks to persons and property prior to manufacturing, distributing, and/or selling HVAC units to Plaintiff and the Class.  Defendants were provided actual or constructive notice of defects in the Daikin Coils by and through numerous complaints from consumers, warranty claims, and various

writings in trade publications and scientific journals regarding the issue of formicary corrosion of copper evaporator and condenser coils.

105.   The risks of the Daikin Coils presented such substantial dangers when the Daikin Coils are used or misused in an intended or reasonably foreseeable way.

106.   Ordinary consumers would not recognize the potential risks posed by the Daikin Coils.

107.   Daikin Coils were purchased for use in Plaintiff's and the Class's properties and homes after Defendants manufactured, designed, sold, supplied, marketed, and/or otherwise introduced them into the stream of commerce.

108.   Plaintiff and the Class suffered harm, damages, and economic losses and will continue to suffer such harm, damages, and economic losses.

109.   Defendants' misconduct was a substantial factor in causing and proximately caused Plaintiff's and the Class's harm, damages, and economic losses.

110.   Defendants' conduct was gross, reckless and in bad faith or willful disregard of the rights and interests of Plaintiff and the Class.  Defendants acted intentionally, maliciously and oppressively, with a willful and conscious disregard of the rights of Plaintiff and the Class, so as to constitute oppression, fraud or malice under the law.

## COUNT VII
## Strict Liability: Design Defect
## (O.C.G.A. § 51-1-11)

111.   Plaintiff and the Class hereby incorporate by reference the factual allegations contained in the preceding paragraphs of this complaint as though fully set forth herein.

112.   Defendants designed, manufactured, distributed, marketed, and/or sold the Daikin Coils.

113.   The Daikin Coils presented a substantial danger when used or misused in an intended or reasonably foreseeable way.  The risks and dangers posed by the design of the Daikin Coils greatly outweighed their utility or benefits.

114.   The Daikin Coils contained a design defect when they left Defendants' possession in that they are made with copper tubing that is particularly susceptible to formicary corrosion, allowing refrigerant to leak and causing malfunction and failure long before the end of the useful life of the product.

115.   The Daikin Coils had risks that were known or knowable to Defendants in light of the scientific knowledge that was generally accepted at the time of manufacture, distribution, and/or sale.  Such dangers include, but are not limited to, frostbite, blistering skin, shortness of breath, severe headaches, dizziness, nausea, weakness, loss of consciousness, irregular cardiac activity, suffocation, and substantial property damage.

31

116.   Defendants knew or reasonably should have known that the Daikin Coils created such significant risks to persons and property prior to manufacturing, distributing, and/or selling HVAC units to Plaintiff and the Class. Defendants were provided actual or constructive notice of defects in the Daikin Coils by and through numerous complaints from consumers, warranty claims, and various writings in trade publications and scientific journals regarding the issue of formicary corrosion of copper evaporator and condenser coils.

117.   The utility of the design of the Daikin Coils is minimal because their tendency to corrode and leak refrigerant fundamentally impairs the function of the HVAC units. The likelihood that Defective Coils will fail is high because they are made of copper tubing that is particularly susceptible to formicary corrosion.

118.   Ordinary consumers would not have recognized the potential risks posed by the Daikin Coils.

119.   Alternative designs for the Defective Coils were available and feasible at the time of manufacture, such as manufacturing the coils with aluminum tubing instead of copper.  The aluminum is cost-effective, would eliminate the Daikin Coils' susceptibility to formicary corrosion, and has been successfully used by other HVAC unit manufacturers.

120.   Plaintiff and the Class suffered harm, damages, and economic losses and will continue to suffer such harm, damages, and economic losses.

121.   Defendants' misconduct was a substantial factor in causing and proximately caused Plaintiff's and the Class's harm, damages, and economic losses.

122.   Defendants' conduct was gross, reckless and in bad faith or willful disregard of the rights and interests of Plaintiff and the Class. Defendants acted intentionally, maliciously and oppressively, with a willful and conscious disregard of the rights of Plaintiff and the Class, so as to constitute oppression, fraud or malice under the law.

## COUNT VIII
### Negligence
### (O.C.G.A. § 51-1-11)

123.   Plaintiff and the Class hereby incorporate by reference the factual allegations contained in the preceding paragraphs of this complaint as though fully set forth herein.

124.   Defendants had a duty to exercise reasonable care in the design, formulation, testing, manufacture, labeling, marketing, sale, and/or distribution of the Daikin Coils.

125.   Defendants knew or should have known that the Daikin Coils could cause serious and significant harm to persons and/or property.

126.   Despite the fact that Defendants knew or should have known that the Daikin Coils posed a serious risk of harm to consumers and/or property,

Defendants unreasonably continued to manufacture and market their products and failed to exercise reasonable care with respect to post-sale warnings and instructions for safe use in breach of their duty of care.

127.    Defendants were negligent and breached their duty to exercise reasonable care in their design, formulation, manufacture, sale, testing, marketing, and/or distribution of the Daikin Coils that posed serious risk of harm to persons and/or property.

128.    At all relevant times, it was foreseeable to Defendants that consumers, including, but not limited to, Plaintiff and the Class, would suffer injuries and harm as a result of Defendants' failure to exercise ordinary care as alleged above.

129.    Plaintiff and the Class suffered harm, damages, and economic losses and will continue to suffer such harm, damages, and economic losses.

130.    Defendants' misconduct was a substantial factor in causing and proximately caused Plaintiff's and the Class's harm, damages, and economic losses.

131.    Defendants' conduct was gross, reckless and in bad faith or willful disregard of the rights and interests of Plaintiff and the Class.  Defendants acted intentionally, maliciously and oppressively, with a willful and conscious disregard of the rights of Plaintiff and the Class, so as to constitute oppression, fraud or malice under the law.

**COUNT IX**
**Attorney's Fees and Expenses**
**(O.C.G.A. § 13-6-11)**

132.   Plaintiff and the Class hereby incorporate by reference the factual

allegations contained in the preceding paragraphs of this complaint as though fully

set forth herein.

133.   Defendants' actions have been in bad faith and have caused Plaintiff

and Class members to suffer unnecessary trouble and expense.  Plaintiff and the

Class are, therefore, entitled to recover all reasonable expenses of litigation,

including attorney's fees, costs and expenses pursuant to O.C.G.A § 13-6-11.

## PRAYER FOR RELIEF

Plaintiff, on its own behalf and on behalf of all others similarly situated,

request the following and pray for judgment as follows:

A.   For an order certifying the proposed Class, designating Plaintiff as the

named representative of the Class, and designating the undersigned as

Class Counsel;

B.   For general damages according to proof;

C.   For special damages according to proof;

D.   For restitution in amounts according to proof;

E.   For injunctive relief;

F.   For exemplary and/or punitive damages as allowed by law;

35

G.    For any other available penalties for each illegal or bad faith business act or practice;

H.    For attorneys' fees, as allowed by law;

I.    For costs of suit incurred herein, as allowed by law;

J.    For pre-judgment and post-judgment interest, as allowed by law;

K.    For leave to amend this Complaint to conform to the evidence produced at trial; and

L.    For such other relief as is proper and just.

## **DEMAND FOR JURY TRIAL**

Plaintiff, on their own behalf and on behalf of the proposed Class, hereby demands a jury trial for all issues so triable.


DATED: May 10, 2016

Respectfully submitted,

/s/ N. Kirkland Pope
**N. Kirkland Pope**
Georgia Bar No. 584255
**Michael L. McGlamry**
Georgia Bar No. 492515
**Kimberly J. Johnson**
Georgia Bar No. 687678
**POPE McGLAMRY KILPATRICK
MORRISON & NORWOOD, P.C.**
3391 Peachtree Rd. NE, Suite 300
P.O. Box 191625 (31119-1625)
Atlanta, GA 30326

Tel: (404) 523-7706
Fax: (404) 524-1648
Email: efile@pmkm.com

**Kenneth S. Kasdan**
California Bar No. 71427
**KASDAN LIPPSMITH
WEBER TURNER LLP**
1900 MacArthur Blvd, Suite 850
Irvine, CA 92612
Tel: (949) 851-9000
Fax: (949) 833-9455
Email: KKasdan@kasdancdlaw.com

**Graham B. LippSmith**
California Bar No. 221984
**Jaclyn L. Anderson**
California Bar No. 258609
**Frank A. Perez**
California Bar No. 305832
**KASDAN LIPPSMITH
WEBER TURNER LLP**
500 S. Grand Ave., Suite 1310
Los Angeles, CA 90071
Tel: (213) 254-4800
Fax: (213) 254-4801
Email: glippsmith@klwtlaw.com

*Attorneys for Plaintiff and the Class*