IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

PAWS HOLDINGS, LLC, on behalf   *
of itself and all others   *
similarly situated,   *
     *
  Plaintiff,   *
     *
   v.   *    CV 116-058
     *
DAIKIN INDUSTRIES, LTD.;   *
DAIKIN APPLIED AMERICAS INC.;   *
and DAIKIN NORTH AMERICA, LLC,   *
     *
  Defendants.   *

---

**O R D E R**

---

Before the Court is Defendant Daikin Industries, Ltd.'s ("DIL") Motion to Dismiss for Lack of Personal Jurisdiction as well as Defendants Daikin Applied Americas Inc. ("DAA") and Daikin North Americas, LLC's ("DNA") Motion to Dismiss the Amended Complaint. (Docs. 32, 33.) Plaintiff filed responses in opposition to both motions (docs. 35, 36), and Defendants filed replies in support of their respective motions (docs. 44, 45).[1] Accordingly, Defendants' respective motions have been fully briefed and are ripe for the Court's review. For the reasons stated herein, Defendants' motions are **GRANTED**.

---

[1] Defendants also filed a Notice of Supplementary Authority in support of their respective motions to dismiss. (Doc. 49.)

# I. BACKGROUND[2]

Plaintiff[3] alleges in its amended complaint that Defendants DIL,[4] DAA,[5] and DNA[6] "design, manufacture and sell heating, ventilation, and air conditioning units ('HVAC Units') containing a component known as an evaporator coil manufactured with copper tubing ('Daikin Coils')."[7] (Amended Complaint, Doc. 5, ¶ 3.) These Daikin Coils consist of copper tubing affixed with aluminum fins secured thereon by aluminum bands that wrap around the tubing. The Daikin Coils contain "a refrigerant that absorbs heat from surrounding air, cooling the air in the process." (Id. ¶ 4.) The trapped heat is then expelled from the exterior of the building to the outside. (Id. ¶ 10.)

Plaintiff alleges, however, that the Daikin Coils fail to perform "their intended purpose of cooling air . . . because

---

[2] When reviewing a Rule 12(b)(6) motion to dismiss, courts must accept the allegations in the complaint as true and construe them in the light most favorable to the plaintiff. Belanger v. Salvation Army, 556 F.3d 1153, 1155 (11th Cir. 2009) (citing Jackson v. BellSouth Telecomm., 372 F.3d 1250, 1262 (11th Cir. 2004)).

[3] Plaintiff is a Georgia limited liability company with its principal place of business in Georgia. (Am. Compl. ¶ 1.)

[4] DIL is a Japanese corporation with its principal place of business in Japan. (Am. Compl. ¶ 2; see also Declaration of Takatoshi Kondo, Doc. 32-2, ¶ 2.)

[5] DAA is a Delaware corporation with its principal place of business in Minnesota. (Declaration of Daniel R. Donoghue, Doc. 33-3, ¶ 2.)

[6] DNA is a Delaware limited liability company with its principal place of business in Texas. (Declaration of Lee J. Smith, Doc. 33-3, ¶ 2.) DNA's single member, Goodman Global Holdings, Inc., is a Delaware corporation with its principal place of business in Texas. (Id. ¶ 3.)

[7] While Plaintiff has defined the HVAC evaporator coils at issue as "Daikin Coils," Defendants contend that this terminology is "coined for the purposes of litigation" and "does not refer to any specific product." (Doc. 33-1, at 7.) For the purposes of this Order, the Court adopts the term Daikin Coils without concluding that the relevant HVAC evaporator coils – or at least their design and/or manufacture – are unique to Defendants' HVAC products.

they corrode and leak refrigerant well before the expiration of their useful life." (Id. ¶ 5.) Plaintiff further alleges that:

> The failure of Daikin Coils to perform as intended is an unavoidable consequence of their design. As a result of their manufacturing process, the copper tubes in the Daikin Coils are prone to "formicary corrosion." This process causes microscopic holes within the tubing that cause the Daikin Coils to leak refrigerant and ultimately fail. The corrosion and failure of Daikin Coils are due to Defendants' actions, including but not limited to, selecting the wrong alloy, defective manufacturing of the Daikin Coils, and failing to properly ensure that the Daikin Coils will perform for their useful life and are fit for their intended purpose. Defendants designed, created product materials for, designed instructions for, caused the manufacture of, and sold HVAC units containing Daikin Coils that were installed in homes throughout Georgia, including Plaintiff's and the Class's homes.[8]

(Id. ¶ 6.) In a properly-functioning HVAC unit, refrigerant rarely needs to be replaced, because "refrigerant does not deplete from use" and "evaporator coils are designed to be sealed systems such that the refrigerant cannot escape." (Id. ¶ 11.) In contrast, Daikin Coils begin to corrode "as soon as the Daikin Coils are put to use under normal environmental conditions," which in turn causes the Daikin Coils to "leak

---

[8] (See also Am. Compl. ¶ 12 ("The Daikin Coils are defectively manufactured and designed using defective copper tubing. As a result of their intended design and the chosen alloy from which they are made, Daikin Coils are particularly susceptible to formicary corrosion and leaking of refrigerant due to said corrosion. Named for its tendency to manifest in branching microscopic tunnels, formicary corrosion forms in Daikin Coils, resulting in microscopic holes that allow the gaseous refrigerant to escape. Corrosion in Daikin Coils begins as soon as the Daikin Coils are put to use under normal environmental conditions—the same conditions Defendants intended that the Daikin Coils perform under. The result is that Daikin Coils leak refrigerant at an ever increasing rate within months of installation, dramatically diminishing the useful life of the product." (footnote omitted)).)

refrigerant at an ever increasing rate within months of installation, dramatically diminishing the useful life of the product." (Id. ¶ 12.) Indeed, "at the time Defendants manufactured, sold and distributed the Daikin Coils," it was widely known that copper evaporator coils were "particularly susceptible to formicary corrosion" and that "[a]lternative designs for the [Daikin Coils] were available and feasible at the time of [their] manufacture."[9] (Id. ¶¶ 13, 119.) Plaintiff alleges that the Daikin Coils "expose consumers to health and safety risks" because "[l]eaked refrigerant can cause severe injury if inhaled or if it comes in contact with skin or eyes." (Id. ¶ 15.) Plaintiff also alleges that "leaked refrigerant can cause damage to surrounding property." (Id. ¶ 16.) Plaintiff further alleges that the Daikin Coils "also damage[] the environment" by "emitting a greenhouse gas [i.e., the leaked refrigerant] that is thousands of times more potent than $CO_2$." (Id. ¶ 17.)

In March 2010, Plaintiff purchased and installed an HVAC system in its medical offices building located in Evans, Georgia. (Id. ¶ 19.) This HVAC system was comprised of nineteen HVAC units which were allegedly "manufactured, sold and

---

[9] Plaintiff alleges that "Defendants were provided actual or constructive notice of defects in the Daikin Coils by and through direct communications with Plaintiff and Plaintiff's agents, as well as numerous complaints from consumers, warranty claims, and various writings in trade publications and scientific journals regarding the issue of formicary corrosion of copper evaporator and condenser coils." (Am. Compl. ¶ 75.)

distributed by Defendants" and "installed by a Daikin-certified installer."[10]   (Id.)   Plaintiff alleges that it has suffered – and will continue to suffer – harm "as a result of the defective Daikin Coils" (and their alleged corrosion and resulting leaking of refrigerant) which have caused Plaintiff's HVAC units to "no longer adequately cool air," which in turn have caused Plaintiff to incur "out-of-pocket repair and service costs," have devalued the HVAC units for which Plaintiff bargained, and have "diminish[ed] Plaintiff's property value unless replaced."[11] (Id. ¶¶ 20-23.)

On December 11, 2015, Plaintiff "mailed a letter" to Mr. Takayuki Inoue, the senior vice president of the SVP, VRV and Light Commercial division of DNA, in which Plaintiff allegedly: (a) identified himself; (b) described the nature of the defect in its Daikin HVAC units; (c) described the damages incurred as

[10] Plaintiff alleges that its nineteen-unit HVAC system is comprised of: (a) two outdoor VRV III Inverter Units, model no. RXYQ120PTJU; and (b) seventeen interior units.   (Am. Compl. ¶ 19.)   Plaintiff has failed to identify the model name and/or number of the seventeen interior units.   Notably, DAA & DNA assert, without factual support, that "[o]utdoor units such as the one specified by Plaintiff contain condenser coils" which they contend are "fundamentally different component[s] from evaporator coils that serve[] different purpose[s]" and further that "Plaintiff alleges no defects in any Daikin-brand condenser coils."   (Doc. 33-1, at 12 n.5.)   In response, Plaintiff asserts, again without factual support, that "[c]ondenser coils are also composed of copper-tubing, carry liquid (as opposed to gaseous) refrigerant, and function to expel heat from building interiors" and that "Plaintiff's exterior units have failed in the same manner as the interior units."   (Doc. 35, at 12 n.2.)   While the Court is obligated to take Plaintiff's factual claims at face value during its present review, Plaintiff may wish to address and clarify this issue in any future amendments to its Amended Complaint that it may file.

[11] (See also Am. Compl. ¶ 20 ("To date, Plaintiff has replaced the Daikin Coils in four (4) of the seventeen (17) interior HVACs and in both of the exterior HVAC units.   Based on past failures, the remaining coils will most likely require replacement in the near future.").)

a result of the Daikin Coils; and (d) "requested adequate relief from Defendants."[12]  (Id. ¶ 76.)  When it did not receive a response to its December 11, 2015 letter, Plaintiff's co-owner, Dr. Sanders R. Callaway, sent a follow-up email to Mr. Inoue on January 4, 2016.  (Id.)  On January 6, 2016, Mr. Inoue sent a reply email to Dr. Callaway confirming that he had received Plaintiff's December 11, 2015 letter.  (Id.)

On May 10, 2016, Plaintiff instituted the instant case. (Doc. 1.)  On May 16, 2016, Plaintiff filed its operative Amended Complaint.  (Doc. 5.)  Plaintiff's Amended Complaint asserts the following claims for relief: (1) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, et seq. ("MMWA"); (2) breach of express warranties; (3) breach of implied warranty of merchantability; (4) breach of implied warranty of fitness for a particular purpose; (5) strict liability – failure to warn; (6) strict liability – manufacturing defect; (7) strict liability – design defect; (8) negligence; and (9) expenses of litigation, including attorney's fees, costs, and expenses, pursuant to O.C.G.A. § 13-6-11.  (See id.)  On August 12, 2016, DIL filed its Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).  (Doc. 32.)  That same day, DAA and DNA filed their motion to dismiss, alleging lack of standing (i.e., lack of

---

[12] Plaintiff did not attach a copy of the December 11, 2015 letter or any other correspondence to its Amended Complaint.

6

subject matter jurisdiction), lack of personal jurisdiction, and failure to state a claim upon which relief can be granted, pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6), respectively.[13]  (Doc. 33.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a plaintiff's complaint contain both "a short and plain statement of the grounds for the court's jurisdiction" and "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(1)–(2).  A responding party thus may move to dismiss the complaint based on, *inter alia*, a lack of subject-matter jurisdiction, FED. R. CIV. P. 12(b)(1), lack of personal jurisdiction, FED. R. CIV. P. 12(b)(2), or a failure to state a claim upon which relief can be granted, FED. R. CIV. P. 12(b)(6).

### A. MOTION TO DISMISS FOR LACK OF STANDING

"Because a motion to dismiss for lack of standing is one attacking the district court's subject matter jurisdiction, it is brought pursuant to Rule 12(b)(1)."  Region 8 Forest Serv. Timber Purchasers Council v. Alcock, 993 F.2d 800, 807 n.8 (11th Cir. 1993) (citations omitted); see also Bochese v. Town of Ponce Inlet, 405 F.3d 964, 974 (11th Cir. 2005) ("Standing is a

---

[13] DIL did not join in DAA/DNA's motion to dismiss.  DIL avers that it "has accepted service of the Summons and Complaint for the sole purpose of determining whether this Court has personal jurisdiction over DIL." (Doc. 32-1, at 3, fn.1.)

threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims."). In assessing standing on a motion to dismiss, a district court must "presume the plaintiff's general allegations embrace those specific facts that are necessary to support the claim." Kawa Orthodontics, LLP v. Sec'y, U.S. Dep't of the Treasury, 773 F.3d 243, 245 (11th Cir. 2014) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)). Further, the court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." Id. (citing Warth v. Seldin, 422 U.S. 490, 501 (1975) ("For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.")).

### B. MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

"In the context of a motion to dismiss for lack of personal jurisdiction in which no evidentiary hearing is held, the plaintiff bears the burden of establishing a prima facie case of jurisdiction over the movant, nonresident defendant." Morris v. SSE, Inc., 843 F.2d 489, 492 (11th Cir. 1988). The plaintiff establishes a prima facie case by presenting "enough evidence to withstand a motion for directed verdict." Madera v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990). A party presents enough evidence to withstand a motion or directed verdict by putting

8

forth "substantial evidence . . . of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions." <u>Walker v. Nations Bank of Florida</u>, 53 F.3d 1548, 1554 (11th Cir. 1995).

In assessing a motion to dismiss for lack of personal jurisdiction, the facts presented in the plaintiff's complaint are taken as true to the extent they are uncontroverted. <u>Cable/Home Commc'n Corp. v. Network Prods., Inc.</u>, 902 F.2d 829, 855 (11th Cir. 1990) (citations omitted). If the defendant submits affidavits challenging the allegations in the complaint, however, the burden shifts back to the plaintiff to produce evidence supporting jurisdiction. <u>Diamond Crystal Brands, Inc. v. Food Movers Intern., Inc.</u>, 593 F.3d 1249, 1257 (11th Cir. 2010). If the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff. <u>Id.</u> (citing <u>Meier v. Sun Int'l Hotels, Ltd.</u>, 288 F.3d 1264, 1269 (11th Cir. 2002)).

### C. MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

To survive a Rule 12(b)(6) motion to dismiss, a complaint must include enough "factual allegations to raise a right to relief above the speculative level," and those facts must "state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 545, 570 (2007). Although a

complaint attacked by a Rule 12(b)(6) motion need not be buttressed by detailed factual allegations, the plaintiff's pleading "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555. The Rule 8 pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).

A complaint should not be dismissed for failure to state a claim, however, "unless it appears beyond a doubt that the plaintiff can prove no set of circumstances that would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Robinson v. United States, 484 F. App'x 421, 423 (11th Cir. 2012) (quoting Lopez v. First Union Nat'l Bank of Fla., 129 F.3d 1186, 1189 (11th Cir. 1997)). At this stage, courts must accept as true all facts alleged in the complaint and construe all reasonable inferences in the light most favorable to the plaintiff. Belanger v. Salvation Army, 556 F.3d 1153, 1155 (11th Cir. 2009) (citing Jackson v. BellSouth Telecomm., 372 F.3d 1250, 1262 (11th Cir. 2004)).

## III. DISCUSSION

### A. DIL'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

DIL contends that this Court lacks personal jurisdiction over it because Plaintiff cannot satisfy either the Due Process

Clause of the Fourteenth Amendment or Georgia's long-arm statute – both of which are required for the Court to exercise jurisdiction over DIL. As well, while conceding that its subsidiary, non-party Daikin Applied Georgia ("DAG"), may transact business in Georgia, DIL maintains that its ownership of DAG alone is insufficient to confer jurisdiction over DIL, and that the separate and independent nature of the companies precludes imputing DAG's contacts with Georgia to DIL. In support of its motion to dismiss, DIL has submitted the Declaration of Takatoshi Kondo, DIL's Legal Officer, who states, *inter alia*:

- DIL's design and manufacturing activities for its HVAC products take place exclusively in Japan or outside the United States.
- DIL does not design, manufacture, advertise, or sell products in Georgia or the United States.
- DIL does not control sales or distribution of its products within the United States, including how many products are sold in Georgia.
- DIL does not design products specifically for the Georgia market or sell its products to a distributor specific to the Georgia market.
- DIL does not perform services in Georgia or derive revenue from any services performed in Georgia.
- DIL is not the warrantor for any warranty offered to consumers in Georgia or the United States.

(Kondo Decl., Doc. 32-2, ¶¶ 3-6, 12, 14.) Mr. Kondo further attests that DIL does not maintain – nor does it have employees who maintain – an office in Georgia, is not registered to do business in Georgia, does not have a registered agent in

11

Georgia, does not pay taxes in Georgia, and does not own real property in Georgia. (Id. ¶¶ 7-11, 13.)

In opposition, Plaintiff argues that personal jurisdiction over DIL is proper because: (1) Georgia's long-arm statute is satisfied as DIL has either transacted business within Georgia (either directly or through DAG) or has derived substantial revenue from goods used or consumed in Georgia; and (2) due process is satisfied as DIL has purposefully availed itself of the benefits of transacting business in Georgia by distributing and deriving substantial profits from its products purchased and used in Georgia (either directly or through DAG), Plaintiff's claims arise out of DIL's forum-related activities, and the exercise of jurisdiction would otherwise comport with fair play and substantial justice. In support of its allegations, Plaintiff has attached the Declaration of Graham B. Lippsmith, Plaintiff's counsel, who attaches thereto copies of screenshots or printouts of DAG's website as well as news articles related to DNA's manufacturing activities and DIL's 2006 acquisition of DAA (f/k/a McQuay International). (Lippsmith Decl., Doc. 36-1.) Plaintiff explicitly concedes, however, that this Court would not have general jurisdiction over DIL. (Doc. 36, at 5.)

To determine whether a nonresident defendant is subject to personal jurisdiction, the Court must perform a two-part analysis. United Techs. Corp. v. Mazer, 556 F.3d 1260, 1274 (11th Cir. 2009). First, the Court must determine whether the

exercise of personal jurisdiction is proper under the forum state's long-arm statute as that statute would be interpreted by the state's Supreme Court.[14]  Id.  Next, the Court must determine whether there are sufficient "minimum contacts" with the forum state to satisfy the Due Process Clause of the Fourteenth Amendment.  Id.; Int'l Shoe Co. v. Washington Office of Unemployment Comp. & Placement, 326 U.S. 310 (1945).

Here, Plaintiff argues that subsections (1) and (3) of Georgia's long-arm statute, O.C.G.A. § 9-10-91, are satisfied. Georgia's long-arm statute states in relevant part:

> A court of this state may exercise personal jurisdiction over any nonresident or his or her executor or administrator, as to a cause of action arising from any of the acts, omissions, ownership, use, or possession enumerated in this Code section, in the same manner as if he or she were a resident of this state, if in person or through an agent, he or she:
>
> (1) Transacts any business within this state; [or]
>
> (3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state.

O.C.G.A. § 9-10-91(1) & (3).

---

[14] The Eleventh Circuit has held that "the Georgia long-arm statute [O.C.G.A. § 9-10-91] does not grant courts in Georgia personal jurisdiction that is coextensive with procedural due process," but instead "imposes independent obligations that a plaintiff must establish for the exercise of personal jurisdiction that are distinct from the demands of procedural due process." Diamond Crystal Brands, Inc., 593 F.3d at 1259.  "[C]ourts must apply the specific limitations and requirements of O.C.G.A. § 9-10-91 literally and must engage in a statutory examination that is independent of, and distinct from, the constitutional analysis to ensure that both, separate prongs of the jurisdictional inquiry are satisfied." Id. at 1263.

To exercise jurisdiction over a nonresident defendant who transacts business within Georgia (*i.e.*, pursuant to O.C.G.A. § 9-10-91(1)), a plaintiff must establish that: "[(1)] the nonresident must have purposefully done an act or consummated a transaction in Georgia; [(2)] the cause of action must arise from or be connected with such act or transaction; and [(3)] the exercise of jurisdiction by the courts of this state must not offend traditional [notions of] fairness and substantial justice." Gateway Atlanta Apartments, Inc. v. Harris, 660 S.E.2d 750, 757 (Ga. Ct. App. 2008) (citing Robertson v. CRI, Inc., 601 S.E.2d 163, 163 (Ga. Ct. App. 2004)). Georgia courts broadly interpret the first prong of this analysis as neither requiring "the physical presence of the nonresident in Georgia" nor minimizing "the importance of a nonresident's intangible contacts with the State [of Georgia]." Innovative Clinical & Consulting Servs., LLC v. First Nat'l Bank of Ames, 620 S.E.2d 352, 355 (Ga. 2005); see also Aero Toy Store, LLC v. Grieves, 631 S.E.2d 734, 739 (Ga. Ct. App. 2006) ("[A] single event may be a sufficient basis for the exercise of long arm jurisdiction if its effects within the forum are substantial enough even though the nonresident has never been physically present in the state." (citing Shellenberger v. Tanner, 227 S.E.2d 266, 266 (Ga. Ct. App. 1976))); Diamond Crystal Brands, Inc., 593 F.3d at 1264 ("[A] nonresident's mail, telephone calls, and other

14

'intangible' acts, though occurring while the defendant is physically outside of Georgia, must be considered." (citing Innovative Clinical, 620 S.E.2d at 355-56)). As such, the first prong requires the Court to "examine all of a nonresident's tangible and intangible conduct and ask whether it can fairly be said that the nonresident has transacted any business within Georgia." Diamond Crystal Brands, Inc., 593 F.3d at 1264. Because such a reading of the first prong in isolation "would expand the personal jurisdiction of Georgia courts beyond that permitted by constitutional due process," Innovative Clinical, 620 S.E.2d at 355, it must be considered in conjunction with the second prong "to determine whether the nonresident has established minimum contacts with the State." Gateway Atlanta Apartments, Inc., 660 S.E.2d at 757 (citing Aero Toy Store, 631 S.E.2d at 737). If the first two prongs are satisfied, the Court then applies the final prong "to determine whether the exercise of jurisdiction over the nonresident is 'reasonable' — i.e., to ensure that it does not result solely from 'random,' 'fortuitous' or 'attenuated' contacts." Lima Delta Co. v. Glob. Aerospace, Inc., 752 S.E.2d 135, 139 (Ga. Ct. App. 2013) (quoting ATCO Sign & Lighting Co., LLC v. Stamm Mfg., 680 S.E.2d 571, 576 (Ga. Ct. App. 2009)); see also Beasley v. Beasley, 396 S.E.2d 222, 224 (Ga. 1990) ("If a defendant has established minimum contacts, the court may then evaluate other factors that

impact on the reasonableness of asserting jurisdiction, such as the burden on defendant, the forum state's interest in adjudicating the dispute, plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the states in furthering substantive social policies.").

Notably, where a parent corporation and its subsidiary "maintain separate and distinct corporate entities, the presence of one in a forum state may not be attributed to the other" for personal jurisdiction purposes. Drumm Corp. v. Wright, 755 S.E.2d 850, 854 (Ga. Ct. App. 2014) (citing Vogt v. Greenmarine Holding, LLC, No. CIV.A.1:01-CV0311JOF, 2002 WL 534542, at *4 (N.D. Ga. Feb. 20, 2002)). "[I]f the parent's control over the subsidiary's activities is so complete that, the subsidiary is, in fact, merely a division or department of the parent," however, the parent may be viewed as doing business through its subsidiary in the forum state for jurisdictional purposes. Id. (quoting Sol Melia, SA v. Brown, 688 S.E.2d 675 (Ga. Ct. App. 2009)). To assert personal jurisdiction over a parent company based on the conduct of its subsidiary, Georgia courts "[g]enerally . . . demand proof of control by the parent over the internal business operations and affairs of the subsidiary . . . . [and] the degree of control exercised by the parent must

be greater than that normally associated with common ownership and directorship." Id. (citing Vogt, 2002 WL 534542, at *4). Activities insufficient to confer jurisdiction over the parent include "monitoring of the subsidiary's performance, supervision of the subsidiary's finance and capital budget decisions, and articulation of general policies and procedures." Id. (citing Doe v. Unocal Corp., 248 F.3d 915, 926 (9th Cir. 2001)).

Here, Plaintiff avers that it has satisfied its burden under the first prong of the O.C.G.A. § 9-10-91(1) analysis by alleging in its Amended Complaint that DIL "has purposely transacted, and regularly solicited business in the state of Georgia by selling and distributing Daikin brand HVAC units containing defective Daikin Coils to customers in Georgia." (Doc. 36, at 6; see also Am. Compl. ¶¶ 8, 12.) Plaintiff ignores, however, that this allegation is directly rebutted by Mr. Kondo's affidavit. (See Kondo Decl., Doc. 32-2, ¶¶ 4-6, 14.) Accordingly, the burden is on Plaintiff to produce evidence supporting its claims of jurisdiction, Diamond Crystal Brands, Inc., 593 F.3d at 1257, which it has failed to do. Indeed, the only evidence put forth by Plaintiff in support of its opposition to DIL's motion to dismiss makes no mention of DIL - let alone mention any purposeful act done or transaction consummated in Georgia at the time Plaintiff served its complaint - other than a 2006 news article regarding DIL's

17

announcement of its acquisition of a Malaysian-based global HVAC company that owned a United States-based HVAC company. (Doc. 36-1, Ex. D.) Moreover, Plaintiff has not pled, even in a conclusory manner, that DIL has failed to maintain a separate and distinct corporate entity from any other entity that *has* transacted business in Georgia – let alone to the extent that would allow that other entity's acts to be imputed to DIL for jurisdictional purposes.[15] Therefore, the exercise of personal jurisdiction over DIL would not be appropriate under Subsection 1 of Georgia's long-arm statute.

To exercise jurisdiction over a nonresident defendant pursuant to O.C.G.A. § 9-10-91(3), a plaintiff must establish that the defendant "[(1)] commit[ted] a tortious injury in [Georgia] [(2)] caused by an act or omission outside [Georgia] [and (3)] the tort-feasor . . . derives substantial revenue from goods used or consumed . . . in [Georgia]." O.C.G.A. § 9-10-91(3). Notably, suffering purely economic losses alone does not

---

[15] Plaintiff avers that "since the filing of the Amended Complaint, Plaintiff has discovered that [DIL] owns an additional American subsidiary, [DAG] . . . ." (Doc. 36, at 8.) According to Plaintiff, "[DAG] is a distributor that is located in Georgia, serves the Georgia market, and is, in fact, the vendor through which [DIL's] products are distributed in Georgia. In this manner, [DIL] directly targets the Georgia market, conducts substantial business in Georgia, derives substantial revenue from products sold in Georgia, and, thus, purposefully avails itself of the benefits of doing business in Georgia." (Id. at 9.) As previously noted, however, the actions of a subsidiary cannot be imputed to the parent company for jurisdictional purposes without "proof of control by the parent over the internal business operations and affairs of the subsidiary . . . greater than that normally associated with common ownership and directorship." See Drumm Corp., 755 S.E.2d at 854 (quoting Vogt, 2002 WL 534542, at *4). Plaintiff has not alleged nor pled such a degree of control over DAG by DIL that would allow the Court to impute DAG's Georgia-related activities to DIL.

18

constitute a "tortious injury" under Georgia law. See <u>Squish La</u> <u>Fish, Inc. v. Thomco Specialty Prod., Inc.</u>, 149 F.3d 1288, 1291 (11th Cir. 1998) ("Georgia's economic loss rule bars recovery in tort for purely economic losses. '[A]bsent personal injury or damage to property other than to the allegedly defective product itself an action in negligence does not lie and any such cause of action may be brought only as a contract warranty action.'" (quoting <u>Advanced Drainage Systems, Inc. v. Lowman</u>, 437 S.E.2d 604, 607 (Ga. Ct. App. 1993)); <u>Home Depot U.S.A., Inc. v. Wabash</u> <u>Nat'l Corp.</u>, 724 S.E.2d 53, 59 (Ga. Ct. App. 2012) ("In cases where the losses resulting from a defective product are purely economic in nature, the economic loss rule bars the plaintiff from seeking recovery under strict liability or negligence theories. 'Economic loss' means damages for the loss of the value or use of the defective product itself, costs of repair or replacement of the defective product, or the consequent loss of profits, unaccompanied by any claim of personal injury or damage to other property. Courts have relegated those who suffer such [economic] loss to the remedies of contract law." (quotations and citations omitted)); <u>Long v. Jim Letts Oldsmobile, Inc.</u>, 217 S.E.2d 602, 604-05 (Ga. Ct. App. 1975) ("Where there is no accident, and no physical damage, and the only loss is a pecuniary one, through loss of the value or use of the thing sold, or the cost of repairing it, the courts have adhered to

the rule that purely economic interests are not entitled to protection against mere negligence, and so have denied the recovery. Here, Long's only damages claimed are economic; diminution in value, and out of pocket expenses for repairs. While we sympathize with Long for the aggravation and inconvenience he has suffered because of the defects in the car, such inflictions are not compensable elements of damages in this case, and his only remedy for the pecuniary damages suffered is in contract."); Unistrut Georgia, Inc. v. Faulkner Plastics, Inc., 217 S.E.2d 611, 612 (Ga. Ct. App. 1975) (allegations that a defendant breached his duty to provide certain plexiglass domes free of optical distortion alleged a breach of a duty arising solely from contract – not outside law – and thus did not allege commission of a tortious injury in the state for purposes of Georgia's long-arm statute); see also O.C.G.A. § 51-1-1 ("A tort is the unlawful violation of a private legal right other than a mere breach of contract, express or implied.").

In this case, Plaintiff avers that it has satisfied its burden under the O.C.G.A. § 9-10-91(3) analysis by alleging in its Amended Complaint that "Defendants' Daikin HVAC products containing Daikin Coils were used and consumed by customers in the state of Georgia" and that "[i]t may be reasonably inferred that Defendants derived substantial revenue from the sale of these HVAC units – including Plaintiff's nineteen-unit VRV

20

systems." (Doc. 36 at 7-8.) As an initial matter, the Court notes that Plaintiff has not pled, even in a conclusory fashion, that DIL has derived substantial revenue from *goods* used or consumed in Georgia. (Cf. Am. Compl. ¶ 8 ("Defendants are subject to personal jurisdiction in this Court pursuant to Fed. R. Civ. P. 4 and O.C.G.A. § 9-10-91 in that they . . . (4) derive substantial revenue from *services* rendered in this state . . . ." (emphasis added)); Kondo Decl., Doc. 32-2, ¶ 12 ("DIL does not perform services in Georgia or derive revenue from any services performed in Georgia.").) Even if it had pled as much, however, the Court would have no evidence from which to reasonably infer that the sale of "Defendants' Daikin HVAC products containing Daikin Coils used and consumed by customers in the State of Georgia," (Doc. 36 at 8), resulted in *substantial* revenue to DIL; Plaintiff offers no evidence regarding the actual revenue, if any, derived by DIL (or even other defendants or non-parties, individually or collectively with DIL) from the aforementioned goods or more importantly, any information regarding the proportion of DIL's overall revenue derived from the aforementioned goods. See Exceptional Mktg. Grp., Inc. v. Jones, 749 F. Supp. 2d 1352, 1364 (N.D. Ga. 2010) ("Although [the nonresident defendant manufacturer's] clients may derive substantial revenue from Georgia, [the plaintiff] has produced no evidence showing that [the nonresident defendant

manufacturer] derives substantial revenue from Georgia. . . .
Thus, [the nonresident defendant manufacturer] is [not] subject
to personal jurisdiction under subsection (3) of the Georgia
long-arm statute."); Jordan Outdoor Enterprises, Ltd. v. Hubei
Wild Trees Textiles Co., No. 4:12-CV-297 CDL, 2014 WL 1389042,
at *3 (M.D. Ga. Apr. 9, 2014) ("Even if the Court strains to
construe all reasonable inferences from the scarce evidence
available in [the plaintiff's] favor, the record falls far short
of establishing that [the nonresident defendant manufacturer]
derived *substantial* revenue from what [the nonresident nonparty
distributor] has sold and shipped to Georgia residents."
(emphasis original)); Little v. hhgregg, Inc., No. 5:11-CV-218
CAR, 2012 WL 2931261, at *4 (M.D. Ga. July 18, 2012)
("Plaintiffs are unable to identify the portion of Ningbo
Hicon's revenue that it derives from Georgia and are unable to
demonstrate whether this amount, when compared to Ningbo Hicon's
entire revenue (also unknown), is substantial. . . . The Court
cannot, therefore, conclude that the revenue that Ningbo Hicon
derives is substantial without any indication as to the amount
of that revenue."). Moreover, even if Plaintiff were able to
overcome these issues, it has not alleged a *tortious* injury that
occurred in Georgia because the only losses it has alleged are
purely economic in nature and are unaccompanied by any claim of

personal injury or damage to other property.[16] (*See* Am. Compl. ¶¶ 21-23 (explaining that Plaintiff's damages include "out-of-pocket repair and service costs," costs associated with "repeatedly replenishing its Daikin Coils with refrigerant," "far less valuable HVAC units than originally bargained for," and "failed major appliances that diminish Plaintiff's property value unless replaced.").) Therefore, the exercise of personal jurisdiction over DIL would not be appropriate under Subsection 3 of Georgia's long-arm statute.

In sum, Plaintiff has failed to establish any of the factual prerequisites needed to support the exercise of jurisdiction over DIL under Georgia's long-arm statute. Because asserting jurisdiction over DIL would not be appropriate under

---

[16] Plaintiff also alleges that: (a) "[t]he Daikin Coils expose consumers to health and safety risks [because] [l]eaked refrigerant *can* cause severe injury if inhaled or if it comes in contact with skin or eyes"; (b) "leaked refrigerant *can* cause damage to surrounding property"; and (c) "[t]he Daikin Coils also damage the environment" because the leaked refrigerant is a greenhouse gas. (Am. Compl. ¶¶ 15-17 (emphasis added).) Notably, however, Plaintiff has not alleged having actually suffered exposure to the aforementioned health and safety risks or damage to surrounding property. Cf. Jung v. Ass'n of Am. Med. Colleges, 300 F. Supp. 2d 119, 136 (D.D.C. 2004) ("[P]laintiffs cannot rely on alleged injury to putative plaintiffs in order to meet the in-District injury requirement" under corresponding subsection of District of Columbia's similar long-arm statute). With regards to Plaintiff's allegation that the Daikin Coils leak greenhouse gasses that damage the environment generally, Plaintiff lacks standing to recover thereon because it has failed to allege a concrete and particularized injury of a legally-protected interest it has suffered that differs from the common injury to the public. See O.C.G.A. § 41-1-3 ("A public nuisance generally gives no right of action to any individual. However, if a public nuisance in which the public does not participate causes special damage to an individual, such special damage shall give a right of action."); see also Lujan, 504 U.S. at 560 ("[T]he irreducible constitutional minimum of standing" requires that a "plaintiff must have suffered an 'injury in fact'" — an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." (internal quotations and citations omitted)).

the forum-state's long-arm statute, the Court need not determine whether its exercise of jurisdiction would comport with the Due Process Clause of the Fourteenth Amendment. Accordingly, Plaintiff's claims against DIL must be dismissed for lack of personal jurisdiction, and DIL's motion (doc. 32) is **GRANTED**.[17]

---

[17] Plaintiff requests limited jurisdictional discovery "to investigate [DIL's] true relationship with the State of Georgia." (Doc. 36, at 15.) In support, Plaintiff claims that it has "set forth newly discovered facts that demonstrate that [DIL] likely has greater ties to Georgia then it admits" because DIL "has a subsidiary in Georgia that appears to distribute [DIL's] products in Georgia, including the exact type of product Plaintiff complains of." (Id.) Generally, a plaintiff "should be given the opportunity to discover facts that would support his allegations of jurisdiction." Majd-Pour v. Georgiana Cmty. Hosp., Inc., 724 F.2d 901, 903 (11th Cir. 1984) (citations omitted). Where a complaint is "insufficient as a matter of law to establish a prima facie case that the district court had jurisdiction," however, it is an abuse of discretion to grant jurisdiction discovery. Butler v. Sukhoi Co., 579 F.3d 1307, 1314 (11th Cir. 2009) (citations omitted). Moreover, courts are "not obligated to permit jurisdictional discovery based on a party's 'mere hunch that there may be facts—or a desire to find out if there are any facts—that justify the exercise of personal jurisdiction.'" Stevens v. Reliance Fin. Corp., No. 2:13-CV-416-MEF, 2014 WL 631612, at *9 (M.D. Ala. Feb. 18, 2014) (quoting Kason Indus., Inc. v. Dent Design Hardware, Ltd., 952 F. Supp. 2d 1334, 1353 (N.D. Ga. 2013)). Here, Plaintiff's boiler plate recitations of jurisdiction in the Amended Complaint have been refuted by DIL through the Kondo Declaration. (See Kondo Decl., Doc. 32-1.) Plaintiff has presented no evidence in response that would support a reasonable inference that DIL has transacted business – or derived substantial revenue from goods used or consumed – in Georgia. Indeed, as previously noted, the only evidence provided by Plaintiff relates to DAG's formation and activities (including the products sold by DAG), as well as news articles related to DNA's manufacturing activities and DIL's 2006 corporate acquisition of another HVAC company. (See Docs. 36-2 – 36-5; see also Lippsmith Decl., Doc. 36-1.) Further, Plaintiff has failed to provide the Court with any proposed discovery requests that it believes necessary to support its claims of jurisdiction. Accordingly, Plaintiff is essentially arguing that it should be given free rein to explore whether DIL has engaged in any activity that would allow Plaintiff to sue in this forum; this, however, is not the purpose of jurisdictional discovery. See Atlantis Hydroponics, Inc. v. Int'l Growers Supply, Inc., 915 F. Supp. 2d 1365, 1380 (N.D. Ga. 2013) ("The purpose of jurisdictional discovery is to ascertain the truth of the allegations or facts underlying the assertion of personal jurisdiction. It is not a vehicle for a 'fishing expedition' in hopes that discovery will sustain the exercise of personal jurisdiction." (citations omitted)). The Court is unwilling to grant Plaintiff jurisdictional discovery on a mere hunch that there may be facts justifying the exercise of personal jurisdiction; accordingly, Plaintiff's request for limited jurisdictional discovery is **DENIED**.

## B. DAA & DNA'S MOTION TO DISMISS

### 1. 12(b)(1) – Standing

In their motion to dismiss, DAA & DNA first argue that Plaintiff's claims against them should be dismissed for lack of standing because "neither entity played any role in the design, manufacture, or sale of Plaintiff's units, and neither entity was the warrantor of those units" and thus "Plaintiff's alleged injury is not 'fairly traceable' to any conduct by [DAA or DNA]." (Doc. 33-1, at 9-10 (citing Declaration of Daniel R. Donoghue, Doc. 33-2, ¶ 3; Declaration of Lee J. Smith, Doc. 33-3, ¶¶ 4-5, 7).) Indeed, DAA & DNA allege that non-party Daikin AC (Americas), Inc. is the entity that actually warranted Plaintiff's HVAC units.[18] (Id. (citing Smith Decl., Doc. 33-3, ¶ 7).)

"To establish Article III standing, a plaintiff must show (1) an injury in fact that is concrete, particularized, and either actual or imminent; (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood that a favorable judicial decision will redress the injury." Kawa Orthodontics, LLP, 773 F.3d at 245 (citing McCullum v. Orlando Reg'l Healthcare Sys., Inc., 768 F.3d 1135, 1145 (11th Cir. 2014)). "To satisfy the injury requirement, [a plaintiff] must

---

[18] DNA also attaches a copy of the warranty it believes is applicable to Plaintiff's outdoor HVAC units. (See Smith Decl., Doc. 33-3, Ex. A.) Notably, "Plaintiff does not concede that this is the applicable warranty." (Doc. 35, at 17.)

show an invasion of a legally protected interest that is sufficiently concrete and particularized rather than abstract and indefinite." Id. at 246 (citing Ga. State Conference of NAACP Branches v. Cox, 183 F.3d 1259, 1262 (11th Cir. 1999)). "To establish [the] causation [requirement], [a plaintiff] must demonstrate its alleged injury is fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." Id. at 247 (citing Lujan, 504 U.S. at 560). "To establish [the] redressability [requirement], it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Id. (citing Lujan, 504 U.S. at 561).

Notably, neither DAA nor DNA appear to be arguing that this Court is without jurisdiction to decide the subject matter of this controversy or that Plaintiff does not have a sufficient personal stake in this lawsuit; rather, they appear to be arguing that Plaintiff has sued the wrong company. (See Doc. 33-1, at 9-10; see also Doc. 45, at 2 (". . . Defendants have introduced uncontroverted evidence establishing that they did not design, manufacture, sell, or warrant the units about which Plaintiff complains.").) At the motion to dismiss stage, however, the Court must accept Plaintiff's well-pled factual allegations as true. See Kawa Orthodontics, LLP, 773 F.3d at 245 (citing Warth, 422 U.S. at 501). Taking Plaintiff's

26

allegations at face-value, Plaintiff has pled: (1) a concrete and particularized actual injury (*e.g.*, excessive corrosion of the Daikin Coils resulting in failed HVAC units and related out-of-pocket repair/service costs); (2) a causal connection between its injuries and Defendants' conduct (*e.g.*, Defendants designed, manufactured, marketed, or distributed the Daikin Coils in Plaintiff's HVAC units); and (3) redressability by a favorable decision (*e.g.*, monetary damages, injunctive relief). Accordingly, Plaintiff has established its standing for the purposes of a motion to dismiss. See <u>Bochese</u>, 405 F.3d at 975–76 ("[W]hen a question about standing is raised at the motion to dismiss stage, it may be sufficient to provide general factual allegations of injury resulting from the defendant's conduct. In contrast, when . . . standing is raised at the summary judgment stage, the plaintiff can no longer rest on mere allegations." (quotations and citations omitted)).

DAA and DNA also argue that Plaintiff's claims should be dismissed for lack of standing because "Plaintiff's Amended Complaint lumps all Defendants together" and "contains no allegations regarding the specific roles played by [DAA] or [DNA]." (Doc. 33-1, at 9.) As pointed out by Plaintiff, however, "[w]hen multiple defendants are named in a complaint, the allegations can be and usually are to be read in such a way that each defendant is having the allegation made about him

individually." Crowe v. Coleman, 113 F.3d 1536, 1539 (11th Cir. 1997). Indeed, "in the context of a multiple defendant lawsuit, the Eleventh Circuit has only required the pleading of specific allegations as to each defendant's conduct when there are fraud allegations." F.D.I.C. v. Briscoe, No. 1:11-CV-02303-SCJ, 2012 WL 8302215, at *7 (N.D. Ga. Aug. 14, 2012) (citing Ambrosia Coal & Constr. Co. v. Pages Morales, 482 F.3d 1309, 1317 (11th Cir. 2007). The Court must also be conscious, however, of the Supreme Court's statements that a complaint's allegations "must give the defendant fair notice of what the claim is and the grounds upon which it rests" and "must be enough to raise a right to relief above the speculative level." Id. (quoting Twombly, 550 U.S. at 550, 555). "Accordingly, at times, a plaintiff's 'grouping' of defendants in a complaint may require a more definite statement." George & Co., LLC v. Alibaba.com, Inc., No. 2:10-cv-719, 2011 WL 6181940, at * 2 (M.D. Fla. Dec. 13, 2011).

Other courts faced with similarly "lumped" allegations against multiple defendants have either dismissed the claims without prejudice or have ordered more definite statements. See, e.g., Briscoe, 2012 WL 8302215, at *8 (requiring the plaintiff to "replead the allegations of its [c]omplaint to provide specific allegations as to each [d]efendant's involvement or responsibility for the alleged wrongs, decisions,

28

approvals, transactions, and loans referenced in the original [c]omplaint"); Petrovic v. Princess Cruise Lines, Ltd., No. 12-21588-CIV, 2012 WL 3026368, at *5 (S.D. Fla. July 20, 2012) (dismissing the plaintiff's complaint without prejudice with leave to replead due to the plaintiff's "grouping" of defendants because "[t]he nature of [p]laintiff's allegation, and against whom they are lodged, must be made clear"); Court Appointed Receiver of Lancer Offshore, Inc. v. Citco Grp. Ltd., No. 05-60080CIV, 2008 WL 926512, at *3 (S.D. Fla. Mar. 31, 2008) (dismissing complaint without prejudice with leave to replead because, *inter alia*, "[b]y lumping these three defendants together in each claim and providing minimal individualized allegations to distinguish their conduct, even though their roles were different, the [plaintiff's] [c]omplaint challenges the standard of Rule 8").

Here, Plaintiff alleges that Defendants are separate entities, but then fails to distinguish which entity actually engaged in the alleged misconduct set forth in its Amended Complaint. Rather, Plaintiff simply asserts that "Defendants'" conduct forms the basis of each cause of action, whether it be the design, manufacture, marketing, distribution, sale, or warranting of its nineteen HVAC units (or the Daikin Coils contained therein). As such, it is unclear as to whom Plaintiff is actually attributing these discreet acts, and accordingly,

whom Plaintiff seeks to hold liable for each act. Plaintiff, however, must clearly and concisely state the circumstances, occurrences and events which support each of its claims, including which specific Defendant(s) committed each specific act of which it complains. Accordingly, after review of the above-cited case law, the Court exercises its discretion to order Plaintiff to replead the allegations of its Amended Complaint to provide specific allegations as to each Defendant's involvement or responsibility for the alleged acts, omissions, or other conduct referenced therein.

## 2. 12(b)(2) – *Personal Jurisdiction*

DAA & DNA contend that this Court lacks personal jurisdiction over them because "Plaintiff's claims do not arise out of [DAA and/or DNA's] forum-related activities given the undisputed fact that [DNA] and [DAA] did not design, manufacture, sell, or warrant Plaintiff's units at all, let alone in Georgia." (Doc. 45, at 3.) See <u>Oldfield v. Pueblo De Bahia Lora, S.A.</u>, 558 F.3d 1210, 1222-23 (11th Cir. 2009) (due process requires that "the contact must be a 'but-for' cause of the tort, yet the causal nexus between the tortious conduct and the purposeful contact must be such that the out-of-state resident will have fair warning that a particular activity will subject it to the jurisdiction of a foreign sovereign." (citations omitted)). In support of these assertions, DAA cites

to the declaration of Daniel R. Donoghue, DAA's Senior Attorney. (*See* Declaration of Daniel R. Donoghue, Doc. 33-2, ¶¶ 3-4 ("[DAA] did not design, manufacture, distribute, sell, warrant, or market Plaintiff's outdoor VRV III Inverter units or indoor units, nor was it involved in the supply chain for Plaintiff's units. [DAA's] design and manufacturing activities for its HVAC products take place outside of Georgia.").) DNA, in turn, cites to the declaration of Lee J. Smith, DNA's Vice President of Market & Applications Strategy. (*See* Declaration of Lee J. Smith, Doc. 33-3, ¶¶ 4, 6 ("Upon information and belief that Plaintiff's indoor units were Model No. FXSQ18MVJU, and that Plaintiff's outdoor units were Model No. RXYQ120PTJU, [DNA] did not design, manufacture, distribute, sell, warrant, or market Plaintiff's units, nor was it involved in the supply chain for Plaintiff's units. . . . [DNA's] design and manufacturing activities for its HVAC products take place outside of Georgia.").) Neither DAA nor DNA, however, has explicitly challenged Plaintiff's allegations that they "manufactured, sold and distributed *the Daikin Coils*." (*See* Am. Compl. ¶ 13 (emphasis added); *cf.* Kondo Decl., Doc. 32-1, ¶ 4 ("DIL does not design, manufacture, advertise, or sell *products* in Georgia or the United States." (emphasis added)).) Accordingly, because DAA & DNA have failed to introduce evidence to controvert the factual allegations of Plaintiff's complaint with regard to the

manufacture, sale, and distribution of the Daikin Coils (as opposed to the HVAC units containing those coils), the Court must accept these allegations as true. See Cable/Home Commc'n Corp., 902 F.2d at 855. As well, neither DAA nor DNA has explicitly challenged Plaintiff's allegations that these entities transact business within Georgia. (See Am. Compl. ¶ 8.) Accordingly, because Plaintiff has alleged an unrebutted *prima facie* basis for personal jurisdiction over DAA & DNA, dismissal under Rule 12(b)(2) is not warranted.

### *3. 12(b)(6) – Failure to State a Claim*

DAA & DNA also move to dismiss all of Plaintiff's claims for failure to state a claim upon which relief can be granted.

### a. Plaintiff's Strict Liability and Negligence Claims

In its Amended Complaint, Plaintiff asserts three categories of strict liability claims against Defendants, namely counts: (5) strict liability - failure to warn; (6) strict liability - manufacturing defect; and (7) strict liability - design defect. Plaintiff also asserts a separate claim for negligence, namely count: (8) negligence. In their motion to dismiss, DAA & DNA argue that these tort-based claims must be dismissed because, *inter alia*, they are barred by the economic loss rule.

To state a claim for strict liability under Georgia law, a plaintiff must show that: (1) the defendant is the manufacturer

of the product; (2) the product, when sold by the manufacturer, was not merchantable and reasonably suited to the use intended; and (3) the product's condition when sold was the proximate cause of the injury sustained by the plaintiff. Chicago Hardware & Fixture Co. v. Letterman, 510 S.E.2d 875, 877-78 (Ga. 1999); see also O.C.G.A. § 51-1-11(b)(1) ("The manufacturer of any personal property sold as new property directly or through a dealer or any other person shall be liable in tort, irrespective of privity, to any natural person who may use, consume, or reasonably be affected by the property and who suffers injury to his person or property because the property when sold by the manufacturer was not merchantable and reasonably suited to the use intended, and its condition when sold is the proximate cause of the injury sustained."). To state a claim for negligence under Georgia law, a plaintiff must show: "(1) [a] legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risk of harm; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and, (4) some loss or damage flowing to the plaintiff's legally protected interest as a result of the alleged breach of the legal duty." Tuggle v. Helms, 499 S.E.2d 365, 367 (Ga. Ct. App. 1998) (citing Bradley Center v. Wessner, 296 S.E.2d 693, 695 (Ga. 1982)).

As previously noted, however, the injury required to state a strict liability claim or a negligence claim based on a defective product must be distinct from the loss of the value or use of the defective product (or the cost of repairing it). This is because "Georgia's economic loss rule bars recovery in tort for purely economic losses." Squish La Fish, Inc., 149 F.3d at 1291 ("Absent personal injury or damage to property other than to the allegedly defective product itself an action in negligence does not lie and any such cause of action may be brought only as a contract warranty action." (citing Advanced Drainage Systems, Inc., 437 S.E.2d at 607); see also Long, 217 S.E.2d at 604 ("The 'harm' contemplated or the interest protected against by such rule is bodily harm, injury to life and limb, injury to others and damage to property other than the product itself. Where there is no accident, and no physical damage, and the only loss is a pecuniary one, through loss of the value or use of the thing sold, or the cost of repairing it, the courts have adhered to the rule that purely economic interests are not entitled to protection against mere negligence, and so have denied the recovery." (internal quotations and citations omitted)); Chrysler Corp. v. Taylor, 234 S.E.2d 123, 124 (Ga. Ct. App. 1977) ("We hold that an 'injury,' within the context of Code Ann. s 105-106 [presently

O.C.G.A. § 51-1-11], does not include damages stemming from loss of the benefit of one's bargain.").

Here, the Court concludes that Plaintiff's strict liability and negligence claims are all barred by the economic loss rule because Plaintiff alleges only purely economic losses resulting from the failure of its HVAC units (*i.e.*, Plaintiff has failed to allege any harm to its "person or property."). As noted in Section III.A, *supra*, Plaintiff's injuries consist of "out-of-pocket repair and service costs," costs associated with "repeatedly replenishing its Daikin Coils with refrigerant," "far less valuable HVAC units than originally bargained for," and "failed major appliances that diminish Plaintiff's property value unless replaced." (Am. Compl. ¶¶ 21-23.) Plaintiff does not challenge that each and every one of these alleged injuries concerns a purely economic loss barred by the economic loss rule. Rather, Plaintiff asserts that it has alleged other injuries recoverable in tort, namely "substantial and unreasonable *risks* of personal injury and property damage to Plaintiff's employees and personal property" because it has alleged that "the Daikin Coils *pose* safety hazards in the form of leaks of dangerous refrigerant" and that "refrigerant gas *can* be harmful to both personal property and the environment." (Doc. 35, at 13 (emphasis added); <u>see also</u> Am. Compl. ¶¶ 15-17.)

These additional alleged injuries, however, fail to sustain Plaintiff's tort-based causes of action.

As an initial matter, Plaintiff has not actually alleged that it suffered exposure to the aforementioned health and safety risks or damage to surrounding property. Second, to the extent that Plaintiff claims that it has suffered an increased risk of injury, such increased risks of injury are insufficient to state an "injury" recoverable in tort under Georgia law. See Parker v. Brush Wellman, Inc., 377 F. Supp. 2d 1290, 1299 (N.D. Ga. 2005) ("[T]he Court observes that no Georgia court has adopted a theory of liability premised on the mere 'increased risk' of suffering from a future disease or injury." (citations omitted)), aff'd sub nom. Parker v. Wellman, 230 F. App'x 878 (11th Cir. 2007); see also Boyd v. Orkin Exterminating Co., Inc., 381 S.E.2d 295, 297-98 (Ga. Ct. App. 1989) (appearing to reject "increased risk of injury" theory as grounds for recovery in tort), overruled on unrelated grounds by Hanna v. McWilliams, 446 S.E.2d 741 (Ga. Ct. App. 1994); see also O.C.G.A. § 51-12-8 ("If the damage incurred by the plaintiff is only the imaginary or possible result of a tortious act or if other and contingent circumstances preponderate in causing the injury, such damage is too remote to be the basis of recovery against the wrongdoer."). Finally, to the extent that Plaintiff alleges an injury to the environment due to the Daikin Coils' alleged leaking of

greenhouse gasses, Plaintiff lacks standing to recover for these alleged injuries because it has failed to allege an injury it has suffered that differs from the common injury to the public. See O.C.G.A. § 41-1-3 ("A public nuisance generally gives no right of action to any individual. However, if a public nuisance in which the public does not participate causes special damage to an individual, such special damage shall give a right of action.").

Hoping to roll a saving throw, Plaintiff baldly asserts that, "even if the economic loss rule applies, Plaintiff's claims survive via the misrepresentation exception" because "Defendants misrepresented their HVAC units to be free from defects, were aware that this was untrue, and failed to disclose the truth about the Daikin Coils to consumers, knowing that consumers would rely upon their representations and omissions to their detriment."[19]    (Doc. 35, at 15.)    Under the "negligent misrepresentation" exception to the economic loss rule, "[o]ne who supplies information during the course of his business, profession, employment, or in any transaction in which he has a pecuniary interest has a duty of reasonable care and competence to parties who rely upon the information in circumstances in

_____

[19] Notably, Plaintiff provides no citations of fact (*i.e.*, to a specific paragraph of the Amended Complaint) or law in support of these assertions. See LR 7.1, SDGa ("Every factual assertion in a motion, response, or brief shall be supported by a citation to the pertinent page in the existing record or in any affidavit, discovery material, or other evidence filed with the motion.").

which the maker was manifestly aware of the use to which the information was to be put and intended that it be so used. This liability is limited to a foreseeable person or limited class of persons for whom the information was intended, either directly or indirectly." Squish La Fish, Inc., 149 F.3d at 1291 (citing Robert & Co. Assocs. v. Rhodes-Haverty P'ship, 300 S.E.2d 503, 504 (Ga. 1983)). The elements of such a "negligent misrepresentation" cause of action are: "(1) the negligent supply of false information to foreseeable persons, known or unknown; (2) such persons' reasonable reliance upon that false information; and (3) economic injury proximately resulting from such reliance." Id. (citing Hardaway Co. v. Parsons, Brinckerhoff, Quade & Douglas, Inc., 479 S.E.2d 727, 729 (Ga. 1997). Because Plaintiff has failed to assert a cause of action for fraud and/or negligent misrepresentation, however, Plaintiff is not entitled to invoke the negligent misrepresentation exception. See In re Atlas Roofing Corp. Chalet Shingle Prod. Liab. Litig., No. 1:13-CV-2195-TWT, 2014 WL 3360233, at *4 (N.D. Ga. July 9, 2014) (holding that the economic loss rule barred plaintiff's strict liability and negligence product liability claims because "[t]his [misrepresentation] exception . . . appears to only apply to misrepresentation claims; e.g., negligent or intentional misrepresentation" (citing Home Depot U.S.A., Inc., 724 S.E.2d at 60)). While Plaintiff has alleged a

cause of action for negligence, said claim is based on DAA & DNA's alleged "failure to exercise reasonable care in their design, formulation, manufacture, sale, testing, marketing, and/or distribution of the Daikin Coils" and "failure to exercise reasonable care with respect to post-sale warnings and instructions for safe use," (Am. Compl. ¶¶ 126-127), rather than any alleged negligent supply of false information to Plaintiff. See, e.g., Waithe v. Arrowhead Clinic, Inc., No. CV 409-021, 2012 WL 776916, at *8 (S.D. Ga. Mar. 7, 2012) ("The Court is aware that Georgia recognizes an exception to the economic loss rule for claims of misrepresentation. However, the instant claim is not based on misrepresentation, but rather on negligent maintenance of patient accounts. Therefore, the misrepresentation exception is not applicable here." (citations omitted)), aff'd, 491 F. App'x 32 (11th Cir. 2012).

Accordingly, because Plaintiff has only alleged purely economic losses and has failed to allege a cause of action for fraud or negligent misrepresentation, Georgia's economic loss rule bars Plaintiff's tort-based claims, namely its strict liability and negligence claims, and these counts (5 through 8) are properly dismissed on these grounds alone.[20]

---

[20] DAA & DNA also assert additional reasons why each of Plaintiff's tort-based causes of action fail as a matter of law. (See Doc. 33-1, at 14-16.) Because all of Plaintiff's tort-based claims are barred under the economic loss rule, the Court need not consider these additional reasons.

### b. Plaintiff's Warranty Claims

Plaintiff also asserts four warranty-based causes of action, namely counts: (1) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* ("MMWA"); (2) breach of express warranties; (3) breach of implied warranty of merchantability; and (4) breach of implied warranty of fitness for a particular purpose. In their motion to dismiss, DAA & DNA argue that these warranty-based claims must be dismissed because, *inter alia*, they are time-barred and fail for lack of notice.

### i. Plaintiff's Implied Warranty Claims

Georgia applies a four-year statute of limitations to warranty claims, regardless of whether they are based on express warranties or implied warranties. See O.C.G.A. § 11-2-725(1); see also McCabe v. Daimler AG, 948 F. Supp. 2d 1347, 1361 (N.D. Ga. 2013) ("Georgia has adopted the UCC's four-year statute of limitations in relation to contracts for the sale of goods, O.C.G.A. § 11-2-725(1), and this applies to implied-warranty claims."). Similarly, a MMWA claim pursued in Georgia is also subject to this four-year statute of limitations. See Speier-Roche v. Volkswagen Grp. of Am. Inc., No. 14-20107-CIV, 2014 WL 1745050, at *5 (S.D. Fla. Apr. 30, 2014) (Because "the Magnuson-Moss Act contains no express statute of limitations, . . . the courts look to [the] most analogous state statute to determine

which statute of limitations to apply."). In a transaction involving the sale of goods,

> [a] cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

O.C.G.A. § 11-2-725(2).

Plaintiff alleges that DAA & DNA breached two implied warranties, namely the implied warranty of merchantability[21] and the implied warranty of fitness for a particular purpose.[22] (Am. Compl. ¶¶ 67-89.) Because "[a]n implied warranty by its nature cannot 'explicitly extend to future performance,'" McCabe, 948 F. Supp. 2d at 1361, however, a breach of an implied warranty occurs – and the statute of limitations for bringing a claim thereunder begins to run – "when delivery or tender of delivery of the goods purchased was made . . . ." Everhart v. Rich's, Inc., 196 S.E.2d 475, 476 (Ga. Ct. App. 1973). Here, Plaintiff has pled that it "purchased and installed" its HVAC units "[i]n March 2010," and that the defect of which it complains, formicary corrosion in the Daikin Coils, "begins as soon as the Daikin Coils are put to use under normal environmental conditions." (Am. Compl. ¶¶ 12, 19.) Because delivery of an

---

[21] See O.C.G.A. § 11-2-314.
[22] See O.C.G.A. § 11-2-315.

HVAC unit must necessarily occur before its installation on the purchaser's property, the Court reasonably infers that the HVAC units (and Daikin Coils) of which Plaintiff complains must have been delivered to Plaintiff sometime in March 2010. Accordingly, the breach of any implied warranty, if any, would have occurred – and thus the statute of limitations on such breach(es) would have begun to run - in March 2010. See McCabe, 948 F. Supp. 2d at 1361; Everhart, 196 S.E.2d at 476. Therefore, Georgia's relevant four-year statute of limitations required Plaintiff to initiate its breach of implied warranty claims by no later than the end of March 2014, which Plaintiff failed to do. Accordingly, all of Plaintiff's implied-warranty claims are barred by the statute of limitations.

Again, hoping to roll a saving throw, Plaintiff asserts that the applicable statute of limitations periods for its warranty-based claims should be tolled under O.C.G.A. § 9-3-96 for DAA & DNA's "fraudulent concealment of the defect and the applicable warranty" because "Plaintiff alleges that Defendants intentionally concealed the fact that the Daikin Coils suffered from a defect that causes them to corrode and leak harmful refrigerant" and the "proffered Limited Product Warranty is presented to Plaintiff for the first time with Defendants'

Motion to Dismiss."[23]  (Doc. 35, at 18.)  Pursuant to O.C.G.A. §
9-3-96, "[i]f the defendant or those under whom he claims are
guilty of a fraud by which the plaintiff has been debarred or
deterred from bringing an action, the period of limitation shall
run only from the time of the plaintiff's discovery of the
fraud."  Id.  Because Plaintiff has not pled the existence of a
confidential relationship between itself and DAA and/or DNA or
any other reason why these entities owed Plaintiff a duty to
disclose, Plaintiff must demonstrate, *inter alia*, an "actual
fraud involving moral turpitude which concealed the existence of
a claim."  See Fed. Ins. Co. v. Westside Supply Co., 590 S.E.2d
224, 229 (Ga. Ct. App. 2003) (citing Jim Walter Corp. v. Ward,
265 S.E.2d 7 (Ga. 1980)); see also Goldston v. Bank of Am.
Corp., 577 S.E.2d 864, 868 (Ga. Ct. App. 2003) ("This Code
section [O.C.G.A. § 9-3-96] has been strictly construed to
require (1) actual fraud involving moral turpitude, or (2) a
fraudulent breach of a duty to disclose that exists because of a
relationship of trust and confidence." (citing Hunter, Maclean,
Exley & Dunn, P.C. v. Frame, 507 S.E.2d 411 (Ga. 1998))); see
also HealthPrime, Inc. v. Smith/Packett/Med-Com, LLC, 428 F.
App'x 937, 943 (11th Cir. 2011) ("The Georgia Supreme Court has
held that only actual fraud can toll the statute of
limitations." (citing Shipman v. Horizon Corp., 267 S.E.2d 244,

---

[23] Again, Plaintiff provides no citations of fact (*i.e.*, to a specific
paragraph of the Amended Complaint) in support of these assertions.

43

246 (Ga. 1980)). Notably, "[c]oncealment of the cause of action must be by positive affirmative act and not by mere silence." Westside Supply Co., 590 S.E.2d at 229 (citing Comerford v. Hurley, 268 S.E.2d 358 (Ga. Ct. App. 1980), aff'd, 271 S.E.2d 782 (Ga. 1980)). Here, even ignoring that Plaintiff has failed to meet the heightened pleading standard for claims of fraud imposed by Federal Rule of Civil Procedure 9(b),[24] Plaintiff has failed to plead any positive affirmative act committed – as opposed to mere silence – by DAA and/or DNA that concealed Plaintiff's warranty-based causes of action. Accordingly, Plaintiff has failed to plead a sufficient basis for the tolling of the applicable statute of limitations.

*ii. Plaintiff's Express Warranty Claims*

Plaintiff also alleges that DAA & DNA made "express warranties concerning the Daikin Coils, including, but not limited to, representations in their catalogs that their products containing Daikin Coils benefit from 'high efficiency, low operating costs;' 'reliable operation;' and 'low-cost

---

[24] See Edwards v. Wisconsin Pharmacal Co., LLC, 987 F. Supp. 2d 1340, 1346 (N.D. Ga. 2013) ("Federal Rule of Civil Procedure 9(b) provides that parties alleging fraud or mistake 'must state with particularity the circumstances constituting fraud or mistake,' though scienter may be alleged generally. In this way, Rule 9(b) supplements rather than abrogates the notice-pleading requirements of Rule 8. To sufficiently plead a claim for fraud, the plaintiff must specify in the complaint (1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendant obtained as a consequence of the fraud." (citing FindWhat Investor Grp. v. FindWhat.com, 658 F.3d 1282, 1296 (11th Cir. 2011)).

maintenance and service.'" (Am. Compl. ¶ 60.) Plaintiff also alleges that DAA & DNA "represented that their products containing Daikin Coils are 'sold pursuant to [...] standard terms and conditions of sale, including Limited Product Warranty.'" (Id.) As well, Plaintiff alleges that DAA & DNA "warrant[ed] that the Daikin Coils were free of defects such that they would properly perform as intended." (Id. ¶ 61.) Plaintiff alleges that DAA & DNA "breached [these] warranties concerning the Daikin Coils given that the Daikin Coils corrode, leak refrigerant, and impede the efficient operation of Plaintiff's and the Class's HVAC units." (Id. ¶ 63.)

As an initial matter, the Court finds as a matter of law that the alleged representations regarding the HVAC units' anticipated performance (e.g., "reliable operation," "low cost maintenance and service," etc.) were vague and indefinite statements of the seller's opinion or commendation of the goods and/or mere non-actionable puffery. See O.C.G.A. § 11-2-313(2) ("It is not necessary to the creation of an express warranty that the seller use formal words such as 'warrant' or 'guarantee' or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty."); Snow's Laundry & Dry Cleaning Co. v. Georgia Power Co., 6 S.E.2d 159,

162 (Ga. Ct. App. 1939) ("For a representation to be construed as a warranty the statement made must be affirmed as a fact; it must be understood by the parties as having that character; it must be positive and unequivocal and not merely a vague, ambiguous and indefinite statement of the seller regarding the property. Representations which merely express a vendor's opinion, belief, judgment or estimate, do not constitute a warranty." (citations omitted)); Sheffield v. Darby, 535 S.E.2d 776, 779 (Ga. Ct. App. 2000) (collecting cases where Georgia courts have found representations to be non-actionable "expressions of opinion, hope, expectation, puffing, and the like").[25] Accordingly, these statements were insufficient as a matter of law to create an express warranty, and thus any express warranty claims based thereon must be dismissed.

---

[25] See also U-Haul Co. of W. Georgia v. Dillard Paper Co., 312 S.E.2d 618 (Ga. Ct. App. 1983) (broker's statements to purchaser that building was of "excellent construction and had been well maintained," that it was "one of the best warehouse buildings in the City of Atlanta," and that "the building was sound" were "expressions of opinion, general commendations, and sales puffing"); Randall v. Smith, 222 S.E.2d 664, 666 (Ga. Ct. App. 1975) ("[T]he oral statements made by [the defendant used car salesman], that the car was in good condition and suitable for driving was mere sales 'puffing.'"); Vitt v. Apple Computer, Inc., 469 F. App'x 605, 607 (9th Cir. 2012) (manufacturer's advertising statements that its product was "'mobile,' 'durable,' 'portable,' 'rugged,' 'built to withstand reasonable shock,' 'reliable,' 'high performance,' 'high value,' an 'affordable choice,' and an 'ideal student laptop'" were "generalized, non-actionable puffery because they are inherently vague and generalized terms and not factual representations that a given standard has been met"); Elsayed v. Maserati N. Am., Inc., No. SACV1600918CJCDFMX, 2016 WL 6091109 (C.D. Cal. Oct. 18, 2016) (manufacturer's claims that its automobiles had "state of the art engineering" which "inevitably enhances the [automobiles'] reliability, for which [the manufacturer] is world renowned" constituted "straightforward examples of generalized, nonactionable puffery").

46

Second, Plaintiff has not actually pled how DAA and/or DNA breached their representation "that their products containing Daikin Coils are 'sold pursuant to [...] standard terms and conditions of sale, including Limited Product Warranty.'" (Am. Compl. ¶ 60.) While Plaintiff asserts that this representation "is an affirmation of fact or promise made by Defendants that Plaintiff's HVAC would be covered by Defendants' Limited Product Warranty," Plaintiff paradoxically offers to present the terms of the Defendants' applicable Limited Product Warranty in a future amendment to its Amended Complaint. (Doc. 35, at 20.) Because Plaintiff now appears to argue that DAA & DNA did in fact provide a Limited Product Warranty in relation to Plaintiff's HVAC products but that it has simply failed to include a copy of the relevant Limited Product Warranty and/or a summation of its relevant terms in the operative Amended Complaint, Plaintiff has failed to plead sufficient facts to demonstrate a breach of any alleged express warranty to provide a Limited Product Warranty covering Plaintiff's HVAC units and thus this express warranty claim must be dismissed. See Brooks v. Branch Banking & Trust Co., 107 F. Supp. 3d 1290, 1296 (N.D. Ga. 2015) ("[A] plaintiff asserting a breach of contract claim must allege a particular contractual provision that the defendants violated to survive a motion to dismiss." (citations omitted)).

Finally, to the extent that Plaintiff alleges that DAA & DNA expressly warranted that the HVAC units/Daikin Coils were "free of defects such that they would properly perform as intended" and/or affirms its original allegations that DAA & DNA did not in fact issue a Limited Product Warranty that covers Plaintiff's HVAC units, (Am. Compl. ¶¶ 60-61), these claims would be time-barred. Plaintiff's respective causes of action would both have accrued at the time of the units' delivery to Plaintiff in March 2010 either with defects and/or without a Limited Product Warranty. See O.C.G.A. § 11-2-725(2) ("A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach.") This is because neither of these alleged warranties explicitly extends to the *future* performance of the goods such that their breach could only be detected at the time of future performance, and thus their breach occurred at the time of delivery of the HVAC units to Plaintiff. See id. Therefore, Georgia's relevant four-year statute of limitations required Plaintiff to initiate its breach of express warranty claims by no later than the end of March 2014, which Plaintiff failed to do. See O.C.G.A. § 11-2-725(1); see also Section III.B.3.b.i, *supra* (discussing the inapplicability of O.C.G.A. § 9-3-96 to Plaintiff's warranty claims). Accordingly, both of these express-warranty claims as

presently pled would be barred by the statute of limitations and therefore must be dismissed.

### iii. Plaintiff's MMWA Claims

Finally, Plaintiff alleges that it is entitled to relief under the MMWA because DAA & DNA "provided Plaintiff with 'implied warranties' as defined in the [MMWA]" but breached these implied warranties (as well as the written express warranties). (See Am. Compl. ¶¶ 44-48, 54-55; see also Doc. 35, at 22 ("[B]ecause Plaintiff has stated viable express and implied warranty claims . . . Plaintiff's MMWA claim should be allowed to proceed.").) DAA & DNA argue that if Plaintiff's state-law warranty claims are dismissed, then Plaintiff's claims under the MMWA must also be dismissed. The Court agrees with DAA & DNA that any MMWA claims that are dependent on a now-dismissed state-law warranty claim must also be dismissed. See Fedrick v. Mercedes-Benz USA, LLC, 366 F. Supp. 2d 1190, 1200 n.14 (N.D. Ga. 2005) ("The [MMWA] does not provide an independent cause of action for state law claims, only additional damages for breaches of warranty under state law. Absent viable breach of warranty claims, Plaintiff's claims for damages under the [MMWA] also fails." (citations omitted)); Dildine v. Town & Country Truck Sales, Inc., 577 S.E.2d 882, 884 (Ga. Ct. App. 2003) ("The [MMWA] allows a consumer who is damaged by the failure of a supplier, warrantor, or service

49

contractor to comply with any obligation under an implied warranty to bring suit for damages and other legal and equitable relief. The [MMWA] defines implied warranty as an implied warranty arising under State law in connection with the sale by a supplier of a consumer product. To recover, therefore, [the plaintiff] must show that [the defendant] breached the implied warranty of merchantability arising under Georgia law."). Moreover, even if Plaintiff alleged a violation of the MMWA independent of its state-law warranty claims, those claims would be time-barred under the relevant four-year statute of limitations. See O.C.G.A. § 11-2-725; see also Speier-Roche, 2014 WL 1745050, at *5 (Because "the Magnuson–Moss Act contains no express statute of limitations, . . . the courts look to [the] most analogous state statute to determine which statute of limitations to apply."); see also Section III.B.3.b.i, supra. Accordingly, because Plaintiff's state-law breach of warranty claims will be dismissed and any state-law-independent MMWA claims would be time-barred, these MMWA claims must be dismissed.[26]

---

[26] Plaintiff also asserts a claim for expenses of litigation, including attorney's fees and expenses, pursuant to O.C.G.A. § 13-6-11. "In order to recover attorney fees as expenses of litigation pursuant to OCGA § 13-6-11, the plaintiff must show that the defendant acted in bad faith, was stubbornly litigious, or caused the plaintiff unnecessary trouble and expense." Fowler's Holdings, LLLP v. CLP Family Investments, L.P., 732 S.E.2d 777, 779 (Ga. Ct. App. 2012). "A prerequisite to any award of attorney fees under O.C.G.A. § 13-6-11," however, "is the award of damages or other relief on the underlying claim." United Companies Lending Corp. v. Peacock, 475 S.E.2d

## IV. CONCLUSION

Upon due consideration and in accordance with the foregoing, **IT IS HEREBY ORDERED** that DIL's Motion to Dismiss for Lack of Personal Jurisdiction (doc. 32) is **GRANTED** due to lack of personal jurisdiction over DIL. **IT IS FURTHER ORDERED** that DAA & DNA's Motion to Dismiss the Amended Complaint (doc. 33) is **GRANTED** due to Plaintiff's failure to state a claim upon which relief can be granted. If Plaintiff wishes to proceed forward with this case, Plaintiff shall have **twenty-one (21) days from the entry of this Order** to file a second amended complaint addressing the deficiencies identified herein (as well as all other issues raised in the Defendants' respective motions), but only against Defendants DAA & DNA and only as to its first, second, and ninth counts[27] against the aforementioned defendants. Plaintiff's failure to replead within this timeframe as directed may result in the dismissal of this action with prejudice without further notice.

**ORDER ENTERED** at Augusta, Georgia this $\mathcal{22}^{nd}$ day of February, 2017.

_____

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

601, 602 (Ga. 1996). Because all of Plaintiff's substantive claims have been dismissed, so too must its claims under O.C.G.A. § 13-6-11.
[27] *i.e.*, (1) Violation of the Magnuson-Moss Warranty Act; (2) Breach of Express Warranties; and (9) Attorney's Fees and Expenses.