# IN THE UNITED STATES DISTRICT COURT FOR THE
# SOUTHERN DISTRICT OF GEORGIA
# AUGUSTA DIVISION

| | | |
|---|---|---|
| PAWS HOLDINGS, LLC, on behalf of itself and all others similarly situated, | * * * * | |
| Plaintiff, | * * | |
| v. | * * | CV 116-058 |
| DAIKIN APPLIED AMERICAS INC.; DAIKIN NORTH AMERICA, LLC; DAIKIN AC; and DAIKIN APPLIED GEORGIA, | * * * * * | |
| Defendants. | * * | |

## O R D E R

On February 22, 2017, this Court granted Defendants' Daikin Applied Americas Inc. ("DAA") and Daikin North Americas, LLC's ("DNA") motion to dismiss and gave Plaintiff Paws Holdings, LLC ("Paws"), leave to amend three of its claims. (Doc. 51.) Plaintiff filed its Second Amended Complaint, which renews all but one of its original claims; adds two new causes of action; and joins two new parties: Defendants Daikin AC ("DAC") and Daikin Applied Georgia ("DAG"). (Doc. 52) Defendants now move to dismiss Plaintiff's amended complaint. (Doc. 55.) Plaintiff filed a brief in opposition to the motion (doc. 58), and Defendants filed a reply in support. Accordingly, the motion has been fully briefed and is ripe for review.

## I. BACKGROUND

A factual background for this case was set forth in the February 22 Order. Plaintiff, however, has pleaded additional facts in its new complaint. Because it will help clarify the issues brought up by Defendants' motion to dismiss, the Court will restate the pertinent facts in this case.

Plaintiff alleges Defendants DAC and DNA designed, manufactured, and distributed heating, ventilation, and air conditioning ("HVAC") units, which were then sold by Defendant DAG. (Second Am. Compl., Doc. 52, ¶¶ 4-5.) The HVAC units contained condenser and evaporator coils ("Daikin Coils") that were designed, manufactured, and distributed by Defendants DAA, DAC, and DNA. (Id. ¶¶ 2-4.) Daikin Coils "contain a refrigerant that absorbs heat from surrounding air, cooling the air in the process, and allowing Defendants' HVAC units to provide air conditioning." (Am. Compl., Doc. 5, ¶ 4.)

Plaintiff operates a dermatology clinic in Evans, Georgia. (Second Am. Compl. ¶ 1.) In March 2010, Plaintiff purchased a Variable Refrigerant Volume HVAC system from DAG.[1] (Id. ¶¶ 5-6.) Before Plaintiff made its purchase, someone Plaintiff identifies as "Defendants' agent" allegedly told Plaintiff that the HVAC system would "save the business money because of lower energy

---

[1] Plaintiff's HVAC system is comprised of: (a) two outdoor Variable Refrigerant Volume III inverter units; and (b) sixteen interior units.

consumption." (Id. ¶ 20.) Plaintiff claims this agent knew the HVAC system would be used in Evans, Georgia. Sometime between 2010 and 2015, Plaintiff began to experience problems with its HVAC system. (Id.) On several occasions, the HVAC system stopped working and Plaintiff was unable to provide air conditioning for its office. (Id. ¶ 23.) Consequently, Plaintiff's employees were exposed to summer heat and experienced symptoms including "feelings of exhaustion, profuse sweating, mild dehydration, nausea, headaches, and general discomfort." (Id.) The heat also "forced [Plaintiff] to close its business in the early afternoon for a week at a time . . . leading to lost profits" and damage to Plaintiff's reputation. (Id.)

In August 2014, Plaintiff attempted to repair its HVAC system by purchasing and installing a replacement Daikin Coil. (Id. ¶ 51.) However, that coil began leaking refrigerant and the HVAC system continued to breakdown. (Id. ¶ 52.) On December 11, 2015, Plaintiff's co-owner, Dr. Sanders R. Callaway, mailed a letter complaining about the HVAC system to Takauki Inoue, Senior Vice President of Sales and Marketing at DNA. (Id. ¶ 24.) Mr. Inoue did not respond until January 4, 2016, after Plaintiff sent a follow up email. (Id.) Mr. Inoue offered to have a technician come to Plaintiff's office and

3

inspect the HVAC system but Mr. Inoue did not explicitly promise to replace or repair any defects. (Id.)

It was later revealed that Plaintiff's HVAC system was breaking down due to allegedly defective Daikin Coils, which had begun to corrode and leak refrigerant. (Id. ¶ 6.) Plaintiff claims the Daikin coils failed because Defendants chose an inappropriate alloy. (Id. ¶ 24.) Plaintiff brought the present action against DAA, DNA, and Daikin Industries, Ltd. on May 10, 2016, and amended its complaint six days thereafter. (Doc. 1.) Plaintiff's first Amended Complaint asserted the following claims: (1) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* ("MMWA"); (2) breach of express warranties; (3) breach of implied warranty of merchantability; (4) breach of implied warranty of fitness for a particular purpose; (5) strict liability – failure to warn; (6) strict liability – manufacturing defect; (7) strict liability – design defect; (8) negligence; and (9) expenses of litigation, including attorney's fees, costs, and expenses, pursuant to O.C.G.A. § 13-6-11. (Doc. 5.) The claims against DAA and DNA were dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).[2] (Doc. 51.) Specifically, Plaintiff's tort claims were barred pursuant to the economic loss doctrine; Plaintiff's

---

[2] Plaintiff's claims against Daikin Industries, Ltd. were dismissed due to lack of personal jurisdiction. (Doc. 51.)

implied warranty claims were barred by the statute of limitations; and Plaintiff's express warranty claims failed to cite the specific language that DAA and DNA breached. (Id.) The Court granted Plaintiff leave to amend "but only against Defendants DAA and DNA and only as to its first [Violation of the Magnuson-Moss Warranty Act], second [Breach of Express Warranties], and ninth [Attorney's Fees and Expenses] counts." (Doc. 51, at 51.)

Plaintiff's Second Amended Complaint renews all of its claims except the MMWA violation; adds new claims for negligent misrepresentation and violation of the Georgia's Fair Business Practice Act, O.C.G.A. § 10-1-393; and joins Defendants DAC and DAG. (Doc. 55, at 5.)[3]

## II. STANDARD

Federal Rule of Civil Procedure 8(a) requires that a plaintiff's complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). To survive a motion to dismiss for failure to state a claim upon which relief can be granted, a complaint must include enough "factual allegations to raise a right to

---

[3] Plaintiff's changes go beyond the leave authorized in the February 22 Order. Accordingly, Plaintiff was required to move for leave before amending its complaint. See FED. R. CIV. P. 15. However, since Defendants do not claim Plaintiff's actions caused any prejudice, the Court will consider the Second Amended Complaint on its merits. See Advanced Estimating Sys., Inc. v. Riney, 77 F.3d 1322, 1325 (11th Cir. 1996).

5

relief above the speculative level," and those facts must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545, 570 (2007). Although a complaint attacked by a Rule 12(b)(6) motion need not be buttressed by detailed factual allegations, the plaintiff's pleading "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555. The Rule 8 pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).

A complaint should not be dismissed for failure to state a claim, however, "unless it appears beyond a doubt that the plaintiff can prove no set of circumstances that would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Robinson v. United States, 484 F. App'x 421, 423 (11th Cir. 2012) (quoting Lopez v. First Union Nat'l Bank of Fla., 129 F.3d 1186, 1189 (11th Cir. 1997)). At this stage, courts must accept as true all facts alleged in the complaint and construe all reasonable inferences in the light most favorable to the plaintiff. Belanger v. Salvation Army, 556 F.3d 1153, 1155 (11th Cir. 2009) (citing Jackson v. BellSouth Telecomm., 372 F.3d 1250, 1262 (11th Cir. 2004)).

## III. DISCUSSION

**A. Plaintiff's Tort-Based Claims**

Defendants argue that the tort-based claims in Plaintiff's amended complaint are still barred by the economic loss rule. Under the economic loss rule, any tort-based claim arising from the use of a defective product must allege a personal injury or damage to property other than the product itself. Long v. Jim Letts Oldsmobile, Inc., 217 S.E.2d 602, 607 (Ga. Ct. App. 1975) ("Where there is no accident, and no physical damage, and the only loss is a pecuniary one, through loss of the value or use of the thing sold, or the cost of repairing it, the courts have adhered to the rule . . . that purely economic interests are not entitled to protection against mere negligence, and so have denied the recovery." (internal quotations and citations omitted)).

Plaintiff's amended complaint includes allegations that the failure of Plaintiff's HVAC system exposed Plaintiff's employees to high temperatures causing them to suffer "nausea, headaches, and general discomfort." (Second Am. Compl. ¶ 23.) Plaintiff also alleges the lack of air conditioning forced Plaintiff to close early every day for a week at a time, thereby sacrificing income and damaging Plaintiff's reputation. These new allegations do not establish a cognizable tort-based claim that satisfies the economic loss rule. First, with respect to the

7

injuries suffered by Plaintiff's employees, Georgia law does not allow an employer to recover for its employees' injuries unless that injury was caused by an intentional tort. Ireland Elec. Corp. v. Ga. Highway Exp., Inc., 303 S.E.2d 497, 498-499 (Ga. Ct. App. 1983). Second, Plaintiff's inability to keep its doors open and the effect that had on Plaintiff's profit and reputation are classic economic losses not recoverable through tort. See Advanced Drainage Sys., Inc. v. Lowman, 437 S.E.2d 604, 607 (Ga. Ct. App. 1993) (finding loss of business was not a physical injury that would give rise to a tort-based cause of action); Hamilton v. Powell, Goldstein, Frazer & Murphy, 306 S.E.2d 340, 344 (Ga. Ct. App. 1983) (damage to plaintiff's reputation was only recoverable through a breach of contract action). The injury Plaintiff is attempting to recover is the injury of not having the product it was promised. Plaintiff is essentially trying to recover consequential damages, which are not recoverable through tort. See Tuscumbia City School Sys. v. Parmacia Corp., 871 F. Supp. 1241, 1252 (N.D. Ala. 2012) ("Consequential economic losses encompass the indirect losses, such as the loss of business, that often accompany a defective product.")

Plaintiff also argues that the process of replacing its HVAC system necessarily caused damage to Plaintiff's building.

Plaintiff's theory is that a fixture cannot be replaced without causing damage to the building and that damage satisfies the economic loss rule. Plaintiff provides no support for its argument, which would essentially create a fixtures exception to the economic loss rule. Rather, replacing the HVAC system and repairing any damage incurred during that process is part of the cost of remedying a defective product. While such a cost may be recoverable in contract, it does not support a separate tort action.

Plaintiff also includes new facts to demonstrate its damages were caused by Defendants' misrepresentation. Specifically, Plaintiff claims a "Daikin representative" (1) told Plaintiff "Daikin's VRV system would save Plaintiff money by reducing energy consumption and would provide greater comfort levels than competing systems"; and (2) implicitly represented that the HVAC system could sustain the environmental conditions found in Evans, Georgia. (Doc. 52.) Under the negligent misrepresentation exception to the economic loss rule, a vendor who negligently supplies false information to a consumer is liable for the economic losses proximately caused by the consumer's justifiable reliance upon the vendor's information. Holloman v. D.R. Horton, Inc., 524 S.E.2d 790, 796-97 (Ga. Ct. App. 1993). To have a cause of action for negligent

9

misrepresentation, a plaintiff must demonstrate (1) the defendant negligently supplied false information, (2) the plaintiff reasonably relied on that information, and (3) the plaintiff's economic injury was proximately caused by its reliance. Hardaway Co. v. Parsons, Brinckerhoff, Quade & Douglas, Inc., 479 S.E.2d 727, 729 (Ga. 1997).

The Daikin agent's promise that the HVAC system would save Plaintiff money sounds similar to the allegations Plaintiff made in its previous complaint. In the February 22 Order, the Court explained that terms such as "high efficiency, low operating costs" are non-actionable puffery. (Doc. 55.) The Daikin agent's savings promise falls into the same category. See Vitt v. Apple Computer, Inc., 469 F. App'x 605, 607 (9th Cir. 2012) (manufacturer's statement that its product was an "affordable choice" was generalized, non-actionable puffery). Since Plaintiff cannot justifiably rely on vague promises, such promises do not give rise to a cause of action for negligent misrepresentation. See Next Century Commc'n Corp. v. Ellis, 318 F.3d 1023, 1031 (11th Cir. 2003); Miller v. Clabby, 344 S.E.2d 751, 752 (Ga. Ct. App. 1986) ("[W]here the representation consists of general commendations or mere expressions of opinion . . . the party to whom it is made is not justified in relying upon it." (quotations and citations omitted) (emphasis in

original)). The Daikin representative's promise that the HVAC system would be able to withstand Georgia's climate is similarly insufficient. See Clabby, 344 S.E.2d at 752-53 (vendor's assertion that pasture which had a tendency to flood was suitable for raising horses was an expression of opinion). Therefore, statements made by the Daikin representative do not give rise to a negligent misrepresentation claim.

Upon the foregoing, Plaintiff alleges purely economic damages and fails to state a claim for negligent misrepresentation. Accordingly, Plaintiff may only recover its economic losses through a breach of contract action and Plaintiff's tort-based claims are properly dismissed on these grounds alone.

**B. Plaintiff's Contract-Based Claims**

Plaintiff's Second Amended Complaint alleges that Defendants breached (1) implied warranties of merchantability and fitness for a particular purpose; and (2) express warranties. Defendants argue that these claims are time-barred and fail to state a claim upon which relief can be granted.

*1. Plaintiff's Implied Warranty Claims*

Under Georgia law, unless explicitly stated otherwise, goods sold by a merchant are implied to be merchantable. O.C.G.A. § 11-2-314. A product breaches the warranty of

11

merchantability when it is defective at the time it is sold or it is not fit for its ordinary purpose. Id.; Paulk v. Thomasville Ford Lincoln Mercury, 732 S.E.2d 297, 302 (Ga. Ct. App. 2012). Implied warranties arise out of a contract of sale of goods and therefore only extend to the buyer who is in privity of contract with the seller. Chaffin v. Atlanta Coca Cola Bottling Co., 194 S.E.2d 513, 515 (Ga. Ct. App. 1972). Additionally, a breach of contract action must be brought within four years of the breach. A breach occurs "when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered." O.C.G.A. § 11-2-725(2).

In the February 22 Order, Plaintiff claimed that its entire HVAC system was not merchantable. That claim was time-barred because Plaintiff purchased its HVAC system in March 2010. Plaintiff's new complaint asserts a different breach. Namely, Plaintiff alleges that "in August 2014, Plaintiff purchased and had installed . . . a new replacement evaporator coil that has corroded and begun leaking refrigerant." (Second Am. Compl. ¶ 51.) Plaintiff argues that the failure of this coil is a breach of the implied warranty of merchantability. Defendants argue that this claim is still barred by the statute of limitations.

12

Because Plaintiff's claim was made within four years of the breach, it is timely.

Defendants also argue any implied warranty claim is defeated by a disclaimer that was part of the 2010 transaction. Yet, Plaintiff is not attempting to recover for the HVAC system's failure, only the replacement coil it purchased in 2014. Neither party contends that Defendants included a disclaimer with this purchase. Accordingly, the disclaimer does not defeat Plaintiff's claim.

Plaintiff's complaint, however, still suffers from defects identified in the February 22 Order. Plaintiff's complaint was dismissed partly on the grounds that Plaintiff failed to distinguish which entity engaged in what misconduct. Regarding the breach of an implied warranty claim, Plaintiff's new complaint is similarly defective. Plaintiff fails to identify which defendant sold the replacement coils. Since Plaintiff has not alleged privity with any individual defendant, Plaintiff has failed to allege an implied warranty. See Gille v. Blue Bird Body Co., 147 F. App'x 807, 809-10 (11th Cir. 2005). Accordingly, Plaintiff's claims for breach of an implied warranty of merchantability and fitness for a particular purpose must be dismissed.

*2. Plaintiff's Express Warranty Claim*

Defendants argue that Plaintiff's express warranty claim still fails because Plaintiff failed to give Defendants an opportunity to repair the HVAC system. Under Georgia law, a breach of express warranty requires (1) notice to the seller, and (2) a reasonable opportunity to cure the defect. O.C.G.A. §§ 11-2-605(1), 11-2-607(3)(a); Knight v. Am. Suzuki Motor Corp., 612 S.E.2d 546, 549 (Ga. Ct. App. 2005). Thus, breach does not occur until the seller refuses to remedy the defect within a reasonable time. Knight, 612 S.E.2d at 549. Here, Plaintiff notified Mr. Inoue of the defect and Mr. Inoue responded by offering to have a technician inspect the HVAC system. Plaintiff argues that because Mr. Inoue did not promise to repair the HVAC system if defects were discovered, his response constituted a breach. However, the purpose of the notice requirement in O.C.G.A. § 11-2-607(3)(a) is to give the seller an opportunity to inspect the product and minimize damages. Car Transp. Brokerage Co. v. Blue Bird Body Co., 322 F. App'x 891, 897-898 (11th Cir. 2009) (affirming district court's dismissal where buyer did not give seller a reasonable opportunity to cure). Under O.C.G.A. § 11-2-607(3)(a), Mr. Inoue was entitled to inspect the HVAC system without giving rise to a breach of contract action. Since Plaintiff does not allege that Defendants refused to repair the HVAC system,

14

Plaintiff's claim for breach of an express warranty is properly dismissed.

By failing to identify the seller of the replacement Daikin Coil, Plaintiff has failed to state a claim for breach of an implied warranty. Additionally, since Plaintiff does not allege that Defendants refused to repair the HVAC system, Plaintiff has not stated a claim for breach of an express warranty.

**C. Georgia Fair Business Practices Act ("GFBPA")**

Plaintiff argues that the misrepresentations made by Defendants' agent--that the HVAC system would save Plaintiff money and was suitable for Evans, Georgia--support a claim under the GFBPA. The GFBPA gives consumers a cause of action regardless of whether a consumer's rights would be limited under another theory of recovery. Attaway v. Tom's Auto Sales, Inc., 242 S.E.2d 740, 742 (Ga. Ct. App. 1978). However, as mentioned above, the agent's vague promises are non-actionable puffery. Like negligent misrepresentation, puffery does not form the basis of a cause of action under the GFBPA. See, e.g., Lyanas v. Williams, 454 S.E.2d 570, 575 (Ga. Ct. App. 1995). Therefore, Plaintiff has failed to allege that Defendants violated the GFBPA.

15

Plaintiff's claim also fails because it failed to give DAG notice before filing its lawsuit. To maintain a cause of action under the GFBPA, a plaintiff must give notice at least thirty days prior to filing suit. O.C.G.A. § 10-1-399(b); Zeeman v. Black, 273 S.E.2d 910, 916 (Ga. Ct. App. 1980). Although the presuit notice provision does not apply to an entity that "does not maintain a place of business or does not keep assets within the state," Plaintiff's complaint alleges that DAG has offices in Georgia. See O.C.G.A. § 10-1-399(b). Accordingly, Plaintiff was required to comply with the presuit notice provision before initiating action against DAG. Because Plaintiff failed to do so, Plaintiff's GFBPA claim against DAG must be dismissed.

**D. Dismissal With Prejudice**

In its motion to dismiss, Defendants ask the Court to dismiss Plaintiff's claims with prejudice.[4] Federal Rule of Civil Procedure 15(a)(2) provides "[t]he court should freely give leave when justice so requires." Generally, a court must give at least one chance to amend before dismissing a claim with prejudice. Bryant v. Dupree, 252 F.3d 1161, 1163 (11th Cir. 2001). Leave is not required, however, where "(1) there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed;

---

[4] In its response in opposition to Defendants' motion to dismiss, Plaintiff asks to be granted leave to amend any defective claim.

16

(2) allowing amendment would cause undue prejudice to the opposing party; or (3) amendment would be futile." Id.

Plaintiff's inability to allege damages that satisfy the economic loss rule demonstrates that leave to amend its tort-based claims would be futile. Leave would also be futile with respect to Plaintiff's express warranty claims. Plaintiff needed to give Defendants an opportunity to cure the defective HVAC system before filing this action. Since Plaintiff cannot cure this problem without initiating a new lawsuit, an amendment would be futile. Accordingly, Plaintiff's tort-based and express warranty claims are dismissed with prejudice.[5]

## IV. CONCLUSION

Accordingly, upon due consideration, Defendants' motion is **GRANTED IN PART AND DENIED IN PART**. Plaintiff's tort-based and express warranty claims are **DISMISSED WITH PREJUDICE**. If it wishes to proceed, Plaintiff has twenty-one days from the entry of this Order to file a third amended complaint addressing the deficiencies described herein, but only as to its GFPBA, implied warranty, and attorney's fees claims.

---

[5] Plaintiff's implied warranty, GFBPA, and attorney's fees claims may be salvaged and therefore dismissal with prejudice is not appropriate.

17

**ORDER ENTERED** at Augusta, Georgia, this 18th day of January, 2018.

_____
J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA