IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

```
DERMATOLOGY SPECIALISTS OF      *
AUGUSTA, INC.; and PAWS HOLDING,*
LLC, on behalf of themselves and*
all others similarly situated,  *
                                *
     Plaintiffs,                *
                                *
          v.                    *       CV 116-058
                                *
DAIKIN APPLIED AMERICAS INC.;   *
DAIKIN AC (AMERICAS), INC.; and *
DAIKIN APPLIED GEORGIA,         *
                                *
     Defendants.                *
```

**O R D E R**

Pending before the Court is Defendants' motion to dismiss Plaintiffs' Third Amended Complaint, the third motion to dismiss filed in this case. On January 18, 2018, this Court granted in part Defendants' motion to dismiss Plaintiff PAWS Holding, LLC's ("PAWS") Second Amended Complaint. The Court, however, granted PAWS leave to amend its complaint with respect to its claim for the implied warranty of merchantability. PAWS renewed that claim by filing its Third Amended Complaint on February 8, 2018. PAWS also joined its tenant, Dermatology Specialists of Augusta, Inc. ("DSA"), as Plaintiff and named Daikin Applied Americas Inc. ("Daikin Applied"), Daikin AC (Americas), Inc. ("Daikin AC"), and

Daikin Applied Georgia ("DAG") as Defendants.[1]  For the reasons set forth below, Defendants' Motion to Dismiss Plaintiffs' Third Amended Complaint (doc. 67) is **GRANTED IN PART AND DENIED IN PART**.

## I. BACKGROUND

This case arises out of numerous problems Plaintiffs experienced with their HVAC system, which was designed, manufactured, and sold by Defendants.  In March 2010, Plaintiffs installed a Daikin variable refrigerant volume ("VRV") system at DSA's medical office in Evans, Georgia.  (Third Am. Compl., Doc. 62, ¶ 20.)  Daikin AC designed, manufactured, and warranted the VRV system, while Daikin Applied and DAG sold and distributed it. (Id. ¶¶ 3-5.)  Plaintiffs' VRV system is comprised of two outdoor VRV III Inverter units and sixteen interior units.  (Id. ¶ 21.) VRV systems include evaporator coils that contain "refrigerant gas that absorb heat from air," and condenser coils "that condense the refrigerant gas back into a liquid, expelling heat." (Id. ¶ 11.) These coils "are designed to be sealed systems that house refrigerant for recirculation" and "do not deplete with use." (Id. ¶ 12.)  Plaintiffs base their claim for breach of the implied

---

[1] The Clerk is **DIRECTED** to terminate Daikin Industries, Ltd and Daikin North America, LLC as Defendants in the case because Plaintiffs have not named those parties in their Third Amended Complaint.  (Doc. 62, ¶¶ 3-5.)

2

warranty of merchantability on these allegedly defective coils. (Id. ¶¶ 65-67, 70.)

Less than a month after installation Plaintiffs' VRV system began to have problems. (Id. ¶¶ 23, 24.) During the first four years of operation, Plaintiffs' system experienced intermittent shut downs, cracked condenser coils, leaks of refrigerant gas, and corrosion. (Id. ¶¶ 27, 28, 41.) Throughout this time, Plaintiffs were in contact with Daikin Applied's employee Simon Awadalla regarding these issues and attempted to find a solution. (Id. ¶¶ 24, 29.) The solutions ranged from inspections, pleas to Daikin senior executives for help, system reboots, installing replacement coils, refrigerant refills, and installing replacement units, all requiring considerable expenditures by Plaintiffs. (Id. ¶¶ 26-41.) None of these actions, however, resolved the VRV system's problems to Plaintiffs' satisfaction.

The VRV system's malfunctions caused Plaintiffs' employees to suffer from "exhaustion, profuse sweating, mild dehydration, nausea, headaches, and general discomfort," as well as requiring DSA to close its business early on numerous occasions, leading to lost profits. (Id. ¶ 45.) Plaintiffs allege the system's issues stem from defective evaporator and condenser coils, which render the entire VRV system defective. (Id. ¶¶ 15, 28, 41.) Specifically, the coils exhibit manufacturing and design defects because the manner in which the aluminum fins are attached to the

3

copper tubing of the coils "promotes crevice formation, accumulation of corrosive agents, localized corrosion, and leaking of refrigerant gas." (Id. ¶ 13.) Plaintiffs allege that Defendants were aware of these issues, that industry trade publications revealed the corrosion problems, that Defendants discontinued their line of interior units installed in Plaintiffs' building, and that Defendants failed to disclose the defects to Plaintiffs or recall the coils. (Id. ¶ 16, 18.)

While Plaintiffs' Third Amended Complaint details multiple failures of different parts of its VRV system and various communications with Defendants to effectuate repairs of those parts, their breach of implied warranty claim is based solely on the failure of a replacement coil installed in an interior unit on August 19, 2014. (Id. ¶¶ 33, 66.) That replacement coil failed in January 2017. (Id. ¶¶ 42, 66.) DSA paid a third-party HVAC repair company $7000 to inspect and refill the system with refrigerant. (Id. ¶ 42.) The inspection revealed that corrosion of the replacement coil caused refrigerant gas to leak. (Id. ¶¶ 42, 66.)

When the replacement coil failed, this lawsuit had already been initiated and Defendants' first motion to dismiss was pending. On February 22, 2017, this Court granted Defendants' first motion to dismiss and gave PAWS leave to amend its complaint. (See Order of Feb. 22, 2017, Doc. 51, at 51.) On March 15, 2017, PAWS filed

4

its Second Amended Complaint, which added a claim for breach of the implied warranty of merchantability for the 2014 replacement coil. (Second Am. Compl., Doc. 52, ¶¶ 48-62.) On March 31, 2017, Plaintiffs decided to part ways with Defendants and installed a new HVAC system manufactured by one of Defendants' competitors. (Third Am. Compl., ¶ 43.)

Thereafter, Defendants filed another motion to dismiss arguing PAWS's Second Amended Complaint failed to state a claim for breach of the implied warranty of merchantability. (Doc. 55.) The Court granted Defendants' motion on that claim because PAWS failed to allege privity with any Defendant by not identifying which Defendant sold the replacement coil. (Order of Jan. 18, 2018, Doc. 61, at 13.) Plaintiffs have now, with permission of the Court, filed their Third Amended Complaint bringing a claim for breach of the implied warranty of merchantability for the 2014 replacement coil. (Third Am. Compl., ¶¶ 63-80.) Defendants again filed a motion to dismiss arguing Plaintiffs failed to state a claim because they did not provide notice of the breach, as required by O.C.G.A. § 11-2-607(3)(a), and because Defendants disclaimed the implied warranty of merchantability in the "Limited Warranty" that accompanied the purchase of Plaintiffs' VRV system in 2010.[2] (Doc. 67.)

---

[2] Plaintiffs attached the Limited Warranty agreement to their Third Amended Complaint. (Doc. 62-5, Ex. E.)

5

## II. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) does not test whether the plaintiff will ultimately prevail on the merits of the case. Rather, it tests the legal sufficiency of the complaint. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). Therefore, the court must accept as true all facts alleged in the complaint and construe all reasonable inferences in the light most favorable to the plaintiff. See Hoffman-Pugh v. Ramsey, 312 F.3d 1222, 1225 (11th Cir. 2002).

The court, however, need not accept the complaint's legal conclusions as true, only its well-pled facts. Ashcroft v. Iqbal, 556 U.S. 662 (2009). A complaint also must "contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Id. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The plaintiff is required to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although there is no probability requirement at the pleading stage, "something beyond . . . mere possibility . . . must be alleged." Twombly, 550 U.S. at 556-57 (citing Durma Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005)).

## III. DISCUSSION

In their motion, Defendants renew two arguments from their previous motion to dismiss. First, they contend that Plaintiffs failed to provide notice of the breach after the replacement coil failed in January 2017. Second, they maintain that the Limited Warranty provided with the VRV system installed in 2010 disclaims the implied warranty of merchantability for replacement parts. The Court will address each argument in turn.

### A. Notice of the Breach

In Georgia, a warranty that goods shall be merchantable is implied into a contract for their sale if the seller is a merchant in goods of that kind. O.C.G.A. § 11-2-314(1). Generally, to be merchantable, a good must pass without objection in the trade or fit the ordinary purpose for which the good is used. O.C.G.A. § 11-2-314(2).

A buyer who has accepted nonconforming goods can recover damages for breach of an implied warranty only if the buyer "within a reasonable time after he discovers or should have discovered any breach notif[ies] the seller." O.C.G.A. § 11-2-607(3)(a). The purpose of this notice provision is two-fold. First, express notice facilitates settlement through negotiation between parties. Wal-Mart Stores, Inc. v. Wheeler, 262 Ga. App. 607, 610 (2003). Second, notice reduces prejudice to the seller "by giving him ample

7

opportunity to cure the defect, inspect the goods, investigate the claim or do whatever may be necessary to properly defend himself or minimize damages while the facts are fresh in the minds of the parties." Id.

What constitutes a reasonable time depends on the nature, purpose, and circumstances of a case. O.C.G.A. § 11-1-205. Consistent with this rule, the Uniform Commercial Code's Official Comments instruct a more lenient notice standard for retail transactions in comparison to the commercial standards that apply to merchant buyers. U.C.C. § 2-607, Comment 4 (notice rule is "designed to defeat commercial bad faith, not to deprive a good faith consumer of a remedy");[3] see also Wal-Mart Stores, 262 Ga. App. at 608-09. The issue of whether notice was reasonably given and sufficient to provide the defendant with an opportunity to cure, however, is generally reserved for summary judgment or trial. See Royal Typewriter Co., a Div. of Litton Bus. Sys. v. Xerographic Supplies Corp., 719 F.2d 1092, 1102 (11th Cir. 1983) ("Where the buyer gives some notice of the breach, the issue of timeliness and sufficiency are questions of fact."); Int'l Multifoods Corp. v. Nat'l Egg Prods., Div. of Hudson Foods, Inc., 202 Ga. App. 203, 266 (1991) ("The question of reasonableness of notice is ordinarily a factual one, although summary adjudication is appropriate if the

---
[3] The Georgia Court of Appeals has expressly approved of consulting the U.C.C.'s Official Comments. Sun v. Mercedes Benz Credit Corp., 254 Ga. App. 463, 465 (2002).

8

uncontroverted facts establish that a plaintiff is not entitled to recover.").

In some instances, service of a complaint satisfies the notice requirement if no prejudice to the defendant results. See Hudson v. Gains, 199 Ga. App. 70, 72 (1991); Wal-Mart Stores, 262 Ga. App. at 608-11; Terrill v. Electrolux Home Prods., Inc., 753 F. Supp. 2d 1272, 1287 (S.D. Ga. 2010); but see Garcia v. Chrysler Grp. LLC, 127 F. Supp. 3d 212, 226 n.11 (S.D.N.Y. 2015) (suggesting Hudson's complaint notice rule could be limited to its facts, which involved a buyer's warranty of title claim brought against a car seller for vehicles that had been confiscated from the buyer as stolen property). The question of whether a defendant suffers prejudice by notice through a complaint or delayed notice is also more properly decided on summary judgment or at trial. See Terrill, 753 F. Supp. 2d at 1287 n.8 ("It is unlikely that a defendant could ever show prejudice at the motion to dismiss stage.").

Plaintiffs allege breach of the implied warranty of merchantability for the replacement coil installed in August 2014, which failed in January 2017. Thus, as Defendants correctly point out, Plaintiffs were required to give Defendants notice of this breach after it occurred in January 2017. Accordingly, the numerous examples of notice alleged by Plaintiffs regarding their

VRV system's failures before January 2017 cannot, by themselves, provide notice for the replacement coil implied warranty claim.

Alternatively, Plaintiffs contend that notice was provided by service of the Second Amended Complaint ("SAC") in this action on March 16, 2017, approximately two months after the alleged breach. The Court finds, as a matter of law, that this allegation of notice satisfies the general pleading requirement and is sufficient to withstand a motion to dismiss. The purpose of the notice requirement supports this conclusion. At the time of the breach, this lawsuit had been initiated and actively litigated. Thus, there were already strong motivations for the parties to engage in settlement negotiations. Further, Defendants cannot deny that they were aware of the myriad of problems Plaintiffs endured with the VRV system. Finally, this was not the first time one of Defendants' coils had failed in Plaintiffs' VRV system, and the parties had already engaged in lengthy discussions on how to resolve the problems caused by defective coils in Plaintiffs' system.[4]

Although Plaintiffs' Third Amended Complaint does not specifically state that service of the SAC satisfies the notice requirement, it does aver generally that notice was given and the

---

[4] While these discussions occurred before the failure of the replacement coil in 2017 and cannot independently satisfy the notice requirement, they are instructive in considering whether the purpose of the notice requirement has been served.

Court, even on a Rule 12(b)(6) motion, may consider matters in the public record including prior filings in the case, such as the SAC. See Halmos v. Bomardier Aerospace Corp., 404 F. App'x 376, 377 (11th Cir. 2010) (per curiam); see also Tellabs, Inc. v. Makor Issues & Rights, Ltd., 55 U.S. 308, 322 (2007); 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357, at 376 (3d ed. 2004) (specifically noting that a court may refer to "items appearing in the record of the case").

Defendants maintain that the SAC cannot serve as notice because it would prejudice them. They argue that the sixteen-day period between service of the SAC on March 16th and Plaintiffs' decision to replace their entire VRV system with another product on March 31st did not provide a meaningful opportunity to cure the defect in the replacement coil, thereby prejudicing Defendants. However, considering the seven-year history between Plaintiffs and Defendants regarding the VRV system's failures and that litigation had been ongoing for nearly a year at the time of the notice, the Court, at this time, is unwilling to decide whether Defendants suffered prejudice. Issues of prejudice are inherently factual questions best decided on summary judgment or at trial when the factfinder can weigh the evidence, not at the motion to dismiss stage. See Terrill, 753 F. Supp. 2d at 1284 n.8 ("It is unlikely that a defendant could ever show prejudice at the motion to dismiss stage."). Thus, construing the allegations in the light most

favorable to Plaintiffs, the Court finds, as a matter of law, Plaintiffs have sufficiently alleged that they provided notice to Defendants regarding the breach of the implied warranty of merchantability for the 2014 replacement coil.

## B. Implied Warranty of Merchantability Disclaimer

Next, Defendants argue that the disclaimer of any implied warranty of merchantability found in the Limited Warranty agreement applies to the replacement coil installed in 2014. The Court, however, already held that the disclaimer does not apply to the replacement coil. (Order of Jan. 18, 2018, Doc. 61, at 13.) The Limited Warranty, by its own terms, applies to a commercial VRV system's "parts only and is limited in duration to one (1) year from the earlier to occur of (a) the date of original installation . . . or (b) twenty-four (24) months from the date of shipment by Daikin AC." (Limited Warranty, Doc. 62-5, Ex. E, at 1.) While replacement parts are included in the warranty, they are only warranted "for the balance of the warranty period applicable to the original part." (Id.) Essentially, the Limited Warranty is only applicable for one year following the date of installation of the VRV system. It follows that, if the warranty only applies for one year, then the disclaimer of any implied warranty applies for the same amount of time.

Because Plaintiffs' VRV system was installed in 2010, the Limited Warranty was no longer in effect when the replacement coil was installed in 2014. In fact, Plaintiffs paid Daikin Applied $600 for the replacement coil and $6,200 in repair costs. (Third Am. Compl., ¶ 33.) Therefore, the disclaimer of implied warranties found in the Limited Warranty cannot apply to the 2014 replacement coil. Finally, while Plaintiffs allege that Daikin Applied's employee Simon Awadalla represented that the coil carried a one-year replacement warranty,[5] neither party contends that Defendants included a disclaimer with the purchase of the replacement coil.

Defendants argue Plaintiffs' Third Amended Complaint and brief both admit the Limited Warranty applied to the 2014 replacement coil. The Court finds, however, that Plaintiffs made no such admission. Plaintiffs attached the Limited Warranty to their Third Amended Complaint to allege contractual privity with Daikin AC, not to make a claim based on the terms of the agreement. Defendants point to Paragraph 69 of the amended complaint to prove Plaintiffs admitted the Limited Warranty applies, but, again, that allegation uses the warranty to show privity with Daikin AC. (See Third Am. Compl., ¶ 69.) Likewise, in their brief, Plaintiffs carefully crafted their words by stating "Defendant Daikin AC's Limited Warranty, which applied to the purchase of the subject VRV system in 2010 and covered original and replacement parts for one

---

[5] (Third Am. Compl., ¶ 32.)

13

year, established contractual privity with Daikin AC with respect to replacement parts, including the failed replacement coil purchased in 2014." (Pls.' Mem. in Opp'n to Defs.' Mot. to Dismiss, Doc. 70, at 9.) Again, Plaintiffs use the Limited Warranty to show privity with Daikin AC.

Accordingly, the Limited Warranty did not apply to the 2014 replacement coil and the disclaimer cannot be used to defeat Plaintiffs' implied warranty of merchantability claim. Because the Limited Warranty does not apply to Plaintiffs' claim, the Court need not consider the conspicuousness of the disclaimer.

**C. Privity with Defendant Daikin AC**

The Court is still not convinced that Plaintiffs have adequately alleged privity with Daikin AC,[6] an essential element to an implied warranty of merchantability claim. See Gille v. Blue Bird Body Co., 147 F. App'x 807, 809-10 (11th Cir. 2005). In their Third Amended Complaint, Plaintiffs allege Daikin AC manufactured the 2014 replacement coil and use the Limited Warranty to establish privity with that Defendant. (Third Am. Compl., ¶¶ 5, 69.) Further, Daikin Applied and Daikin Applied Georgia sold and distributed the replacement coil to Plaintiffs, thereby establishing privity. (Id. ¶¶ 3, 4, 69.)

---

[6] The Court's previous Order on Defendants' Motion to Dismiss the Second Amended Complaint found that Plaintiffs failed to allege privity with any Defendant. (Order of Jan. 18, 2018, at 13.)

In Georgia, the general rule is that no implied warranty runs from a manufacturer to a remote consumer because no privity of contract exists between them. Chaffin v. Atlanta Coca-Cola Bottling Co., 127 Ga. App. 619, 619 (1972). Privity between a remote consumer and a manufacturer can exist, however, where the "manufacturer, through its authorized dealer[,] issues to the purchaser of one of its automobiles from such dealer[,] admittedly as part of the sale[,] a warranty by the manufacturer running to the purchaser." Chrysler Corp. v. Wilson Plumbing Co., Inc., 132 Ga. App. 435, 437 (1974); Jones v. Cranman's Sporting Goods, 142 Ga. App. 838, 842 (1977) (applying rule to the sale of a gun); Terrill, 753 F. Supp. 2d at 1288 (washing machine). This exception to the general privity rule is a means of implying privity where the sale is effectively a direct sale between the manufacturer and the remote consumer. See Studebaker Corp. v. Nail, 82 Ga. App. 779, 783 (1950) (characterizing this type of transaction as "in effect a direct purchase" by the remote consumer from the manufacturer). The essential element to bridge the privity gap is the manufacturer providing an express warranty for the product sold to the remote consumer.

Here, the Limited Warranty issued by Daikin AC for the VRV system cannot imply privity with Plaintiffs for the replacement coil. As discussed above, the Limited Warranty does not apply to the coil. The purchase of the coil was a separate sale from the

15

original system. Although Daikin AC manufactured both products, it only issued an express warranty — the key to bridging the privity gap — for the VRV system, not the replacement coil. Because Plaintiffs' claim is based solely on the 2014 replacement coil, they cannot use the 2010 Limited Warranty to establish privity with Daikin AC. Thus, the general manufacturer privity rule applies, and Plaintiffs are not in privity with Daikin AC, the coil's manufacturer.

Plaintiffs further allege that Daikin Applied's employee Simon Awadalla "represented via email that the coil carried a one-year replacement warranty," but "did not specify which Daikin entity offered the warranty." (Third Am. Compl., ¶ 32.) Further, "on information and belief, Plaintiffs allege that Daikin Applied and/or Daikin AC is the warrantor of the replacement coil." (Id.) These allegations are insufficient to establish privity between Daikin AC and Plaintiffs for the 2014 replacement coil.

Further, the failure of the coil occurred well past the expiration of any possible one-year replacement warranty. Cases implying privity between a manufacturer and a remote consumer generally involve breaches that occur during the life of the warranty. See, e.g., Hemmings v. Camping Time RV Ctrs., LLC, 2017 WL 4552896 at *6 (N.D. Ga. Oct. 11, 2017) (claimed breach occurred when manufacturer's express warranty was still in effect); Terrill, 753 F. Supp. 2d at 1288 (same); cf. Lauria v. Ford Motor

16

Co., 169 Ga. App. 203, 205-06 (1983) (warranty for car repair made by manufacturer's authorized dealership did not create privity between the manufacturer and the plaintiff because the vehicle was "purchased from a private party, and no longer under factory warranty" and because the dealership was not an agent of the manufacturer under their agreement). Regardless, Plaintiffs' complaint does not adequately allege privity with Daikin AC. Therefore, Plaintiffs have failed to establish a claim for implied warranty of merchantability against Daikin AC, and that Defendant shall be dismissed.

## IV. CONCLUSION

Based on the foregoing, Plaintiffs have stated a claim for breach of the implied warranty of merchantability regarding the 2014 replacement coil. As discussed above, Plaintiffs complied with O.C.G.A § 11-2-607(3)(a)'s notice requirement by filing their Second Amended Complaint and the implied warranty disclaimer does not apply to the replacement coil. However, Plaintiffs did not sufficiently allege privity with Defendant Daikin AC and that Defendant is due to be dismissed. Therefore, Defendants' motion to dismiss (doc. 67) is **GRANTED IN PART AND DENIED IN PART**. The Clerk is **DIRECTED** to terminate Defendant Daikin AC (Americas), Inc. Plaintiffs' claim against Defendants Daikin Applied Americas, Inc. and Daikin Applied Georgia, however, shall proceed.

The Clerk is further **DIRECTED** to terminate Daikin Industries, Ltd and Daikin North America, LLC as Defendants in the case because Plaintiffs' have not named those parties in their Third Amended Complaint. The parties **SHALL** conduct a Rule 26(f) conference within **twenty-one days** of the date of this Order and file a joint 26(f) report within **seven days** of the date of the conference. Upon receipt of the 26(f) report, the United States Magistrate Judge **SHALL** issue a scheduling order.

**ORDER ENTERED** at Augusta, Georgia, this 3rd day of January, 2019.

_____
J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA